FILED '18 DEC 18 AM10:35
US BANKRUPTCY MIE-DET

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**IN RE:**
**CHRISTOPHER D. WYMAN**
***Debtor(s),***

**CASE NO. 12-32264**
**CHAPTER 7**

______________________________\

# OBJECTION TO IMPROPER MOTION, DE 182

Now comes MICHAEL E. TINDALL, appearing ***pro per***, and as a party in interest states the following as his OBJECTION to DE 182, TRUSTEE'S "**AMENDED MOTION**".

1. On June 7, 2018, Trustee filed a Motion, DE 176, to sell real property under *11 USC 363(b)*, subject to existing liens.
   A. No request, under *11 USC 363(f),* to sell free and clear of liens, was made.
   B. The subject sale provided for the sale of the real property for $65,000.00 [despite a prior offer dated July 15, 2014 for $82,000 see attachment to Exhibit B], and, purported to include the additional transfer of machinery and equipment owned by the Trustee that he valued, in open court, at a minimum of $50,000.00. DE 176, Addendum I, No. 5.
   C. The transaction was to close on or before September 15, 2018. Neither the Sale Agreement, nor this Court's Order

approving it, authorized any extension. See, Case No. 14-03017, DE 123.

D. The Purchaser failed to close the transaction, as agreed. See, Exhibit A.

2. On July 5, 2018, this Court entered its Order approving the proposed sale, as requested, under *11 USC 363(b)*. See, Case No. 14-03017, DE 123.

*A.* This Court's Order is/was a "final appealable Order." *Winget v. JP Morgan Chase Bank NA, 537 F.3d 578 (6th Cir 2008); In re Frortier, 315 BR 829, 834 (WD MI 2004).*

B. No motion to reconsider the entered order was filed within the time period imposed by Fed. R. Bank 9023.

C. No appeal was taken from the entered order within the time period imposed by Fed. R. Bank 8002.

*D.* The order is now "***res judicata***" as to the Trustee. *Winget, supra.*

3. No federal or local rule authorizes the "amendment" of a "motion" that has already been resolved, and, that has ripened into a final appealable order; particularly where, as here, that order is now ***res judicata*** against the Trustee following expiration of the applicable appeal period.

A. DE 182 failed to comply with Fed. R. Bank. 2002

B. Fed.R. Bankr. P. 2002(c)(1). **requires the sale notice to "include** the time and place of any public sale, **the terms and conditions of any private sale** and the time fixed for filing objections. The notice of a proposed use, sale, or lease of property, including real estate, is sufficient if it generally describes the property."

4. This Court therefore lacks the authority to consider DE 182 and to grant the relief requested. *Law v. Siegel, ___ US ___; 134 S.Ct. 1188, 1194; 188 L.Ed2d 146 (2014)*(**The court lacks authority to grant relief contrary to the express provisions of the Bankruptcy Code.**)
5. DE 182 is also both meritless and frivolous, based on the existing/established record in this Court; and, the applicable law, both of which are within the actual knowledge of the Trustee. *Lundstead v. JRV Holdings LLC, 225 F.Supp 3d 622, 626-7 (ED MI 2016)*; See, Exhibit B.

   A. Liens "ride through" bankruptcy unaffected, unless the lien is disallowed or avoided. *Johnson v. Home State Bank, 501 US 78 (1991).* The first priority Judgment Lien in this case was "allowed" by this Court and may not now be contested, See Exhibit B; and, the attorney's lien was created by the retention approved by this Court's order. See, *Lundstead* (**contingent fee attorney lien created upon execution of retention agreement**).

   B. The validity and extent of a lien against property is determined by state law. *Butner v. US, 440 US 48, 55 (1979); In re Omega Grp. Inc., 16 F.3d 1443, 1450 (6th Cir 1994).*

   *C.* This Court's own record clearly reflects that the recited mortgage to Linck was discharged by this Court:

      (i) "Turning to the fraudulent conveyance claims, the Court first finds that the mortgage given by the Debtor to Mr. Linck was discharged. To the extent that Mr. Linck claims that this mortgage still exists, the Discharge of Mortgage clearly indicates that the mortgage was

released and satisfied." Case No. 12-03348, DE 66, 3/8/13, P4.

(ii) Even if this Court had NOT ruled the Linck mortgage discharged, this Court's record clearly reflects that Trustee took all right title and interest of Linck in the subject realty, by Quit Claim Deed dated June 20, 2014, expressly approved by this Court on the record as part of the settlement with Linck. See, Exhibit C.

(iii) Under Michigan law, the doctrine of "merger of title" operates to eliminate the alleged mortgage interest. **Merger of Title -** The absorption of a lesser estate into a larger estate. **Merger is the absorption of a lesser estate by a greater estate, and takes place when two distinct estates of greater and lesser rank meet in the same person or class of persons at the same time without any intermediate estate.**' *US Leather, Inc. v. Mitchell Mfg. Group, Inc., 276 F.3d 782, 787-789 (C.A.6, 2002)[applying Mich law];* *HERITAGE VILL. ASS'N v. WARREN FIN. ACQ., 305 Mich. App. 92, 850 NW 2d 649, 656 (2014); von Meding v Strahl, 319 Mich. 598, 605; 30 NW2d 363 (1948)*; Dimoff v Laboroff, 296 Mich. 325, 328; 296 N.W. 275 (1941). *See Anderson v Thompson, 225 Mich 155, 159; 195 NW 689 (1923)* **(generally speaking, when the holder of a real estate mortgage becomes the owner of the fee, the mortgage interest or estate is merged into the fee estate).**

*D.* Under Michigan law, both Judgment Liens and attorney liens are valid and enforceable. *Thomas v. Dutkavich, 290 Mich App 393; 803 NW2d 352 (2010); Lundstead, supra.*

*(i)* A Judgment Lien attaches to the property at the time the notice is recorded. *Thomas, at 358.*

      *(ii)* A Judgment Lien remains attached to the property and cannot be discharged by the sale of that property until paid in full. *Thomas, at 359*

*(iii)* Accordingly, even after a successful conveyance to a vendee that takes fee simple title, without full payment to the lienholder, the lien continues to be an encumbrance on the property despite the new ownership and is not dischargeable except on full payment. *Thomas, at 361.*

*E.* An attorney's Lien attaches to real estate where:

(i) the parties have an express agreement providing for a lien,

(ii) the attorney obtains a judgment for the fees; or

(ii) **special equitable circumstances exist to warrant imposition of a lien**. *George v. Sandor M. Gelman PC., 201 Mich App 474, 478; 506 NW2d 583 (1993)*

*(iv)* The attorney lien exists as part of the equitable power of the Court to deal with its docket. Special equitable circumstances exist where the attorney has been appointed/retained by the court itself. *Kysor Ind. Corp. v. DM Liquidating Co., 11 Mich App 438, 446; 161 NW2d 452 (1968).* The lien is not lost by a transfer of possession of the property to the court, or, to another person, such as a trustee, for special purposes under court authority or order. *Id at 446* The lien is paramount to the rights of the client and his creditors, and only

voluntary release by the attorney will defeat the lien. *Id at 446.*

*F.* For the reasons stated, Trustee cannot meet his burden of establishing an objective factual or objective legal basis to dispute the validity of the liens. *In re Octagon Roofing, 123 BR 589, 590 (BND Ill 1991)*. Mere allegations of "bona fide dispute" are insufficient. *Id.; Winget, supra; In re DSC Ltd., 486 F.3d 940 (6th Cir 2007).*

Wherefore, the undersigned respectfully requests this Court dismiss DE 182, without hearing, as this Court has no authority to entertain the improper motion or to grant the relief it requests.

Respectfully Submitted,

/S/

MICHAEL E. TINDALL
18530 MACK AVE., STE 430
DETROIT, MI 48236
(248)250-8819
**Direct Email: met@comcast.net**

Dated: 12/18/18

12-32264-dof Doc 185 Filed 12/18/18 Entered 12/18/18 10:47:02 Page 6 of 32

**CASE NO 12-32264**

# EXHIBIT A

**From:** dgrooms@selecttitleagency.com [mailto:dgrooms@selecttitleagency.com]
**Sent:** Friday, September 14, 2018 4:42 PM
**To:** 'MET'
**Subject:** RE: 1011 E Jones Rd., Howell MI 48855-9298

Hello,
Closing date has been extended out to December 5, 2018. Once we have the necessary approvals and items to clear title and the closing is scheduled, we will reach out to you. Thank you.

*Sincerely,*
*Dawn M. Grooms*
*Escrow Manager*
*Select Title Company*
*6870 Grand River*
*Brighton, MI 48114*
*Ph 810-220-1370*
*Fax 810-885-5333*

**Note: All funds due for closing in excess of $20,000.00 must be wired to Select Title prior to closing**

**Additionally: In order to provide accurate closing figures to our clients and customers, please allow 48 hours for processing preliminary and/or final Closing Disclosure requests.**

**Contact email addresses:**
New orders: **order@selecttitleagency.com**
Title revisions, CPL's, Prelim CD/HUD's etc: **revision@selecttitleagency.com**
Pre-Closing Department: **preclose@selecttitleagency.com**
Scheduling Department: **schedule@selecttitleagency.com**
Closing Department: **close@selecttitleagency.com**
Final Policies: **policy@selecttitleagency.com**

## WARNING! INTERNET FRAUD ADVISORY

*Wire fraud and email hacking and phishing attacks are on the rise!*
**ALWAYS** confirm our wire transfer instructions by phone with a known staff member before sending any funds.
**NEVER** respond to any random emails that claim to contain revised wire transfer instructions, even if they appear to be sent by our company



**CASE NO 12-32264**

# EXHIBIT B

**MET**

**From:** MET <met@comcast.net>
**Sent:** Thursday, August 02, 2018 9:13 AM
**To:** Samuel D. Sweet (trusteesweet@hotmail.com)
**Subject:** Duggan Lien on 1011 Jones Rd.
**Attachments:** consent judgment.pdf; signed settlement docs.pdf; 1011 _Jones_Road_Offer_to_Purchase.pdf; sweet attachments 1-6.pdf

# MICHAEL E. TINDALL

Good morning Sam:

Mr. Elie Bejjani contacted me last week concerning Ms. Duggan's allowed secured claim/ lien against first proceeds of the approved sale, under LBR 6002(a). He requested information and my testimony to support a proposed motion. I agreed to provide the facts you requested directly, as my testimony would be an admission by the estate.

1. Ms. Duggan's allowed secured claim is based on a Judgment entered April 24, 2012.
2. A state court injunction prohibiting Wyman from transferring the property also entered.
3. Wyman transferred the property to Pichler April 24, 2012, pre-petition, in violation of the injunction.
4. The Judgment Lien was perfected May 3, 2012, also pre-petition.
5. The Judgment Lien need not relate to a dispute over the property; and, even extends to property acquired after the Judgment enters. MCL 600.2801(a)(i); 2801(c); 2803.
6. No court order is required to perfect a Judgment Lien. MCL 600.2803.
7. The Wyman /Pichler, preferential transfer was timely challenged by Mr. Mason, under Section 547, well within the 2yr limitation period of Section 546(a)(1)(A).
8. The limitation applicable to Section 547 expired May 26, 2014.
9. Court-ordered mediation occurred in the Wyman/Pichler/Linck matter in April 2014. That mediation was unsuccessful.
10. In June 2014, a settlement was achieved with Linck only. See, attached Nos. 1,2.
11. The Linck settlement produced a payment of $15,000 [roughly a 30% discount] by Linck to Duggan solely to settle Duggan's damage claims of $18,739.80 against Linck for fraud. See attached Nos. 2A, 3.
12. Linck's payment was not for damage claims against Wyman or Pichler, and, was not a payment toward the secured claim/lien against the property. See attached 2, 2A.

13. The Linck only settlement was specifically approved, on the record in open court, as applicable to Linck only. See settlement documents attached. The attached Judgment was entered. See, Judgment attached.

14. In July 2014, the attached $81,000 cash offer for the property was received. See, Offer attached.

15. Trustee Mason specifically recognized the validity of the Duggan secured lien, authorized Ms. Duggan to accept the offer, See attached No. 4, and, agreed to convey the property to her, subject to the full amount of her secured lien. See, attached No. 5.

16. The sale could not be completed due to the Pichler/Toll "stay", later dissolved by the dismissal of Toll's appeal to the District Court.

17. I discussed all of this with you, in Detroit - at the District Court hearing to withdraw reference, in October 2014. Rod Gluzack also discussed this with you in September 2014. See attached No. 6.

18. Proof of the secured claim was filed with the Bankruptcy Court, as ordered, November 25, 2014, after you become trustee.

19. No objections were filed, as required by the applicable rules, and the secured claim was allowed under Sections 502(a), 506(a), and, Rules 3001(f), 3002(c) and 3007(a).

20. The allowed secured claim cannot now be disputed, by anyone; takes priority over all other claims against the property MCL 600.2807(2); and, clouds title to the property until paid in full. MCL 600.2811, 2819.

I assured Mr. Bejjani that filing a motion should not be necessary. Any confusion over these events must result due to them occurring during Mr. Mason's tenure as trustee before you succeeded him.

If there are further questions, let me know.


**MICHAEL E. TINDALL**
met@comcast.net

**MET**

---

**From:** MET <met@comcast.net>
**Sent:** Thursday, June 19, 2014 12:48 PM
**To:** MICHAEL MASON 2 ; MICHAEL MASON TRUSTEE ; RODG@BRGPC.COM (RODG@BRGPC.COM)
**Subject:** settlement with Linck

Mr. Linck has agreed to a settlement of all claims against him as follows:

1. He will pay Ms. Duggan's damages - $15,000
2. He will assign/transfer title of all equipment, vehicles and personal property owned by him and held or possessed by Wyman [as reflected on the Petition, Schedules or described in the examinations of Linck and Gentry] to the Trustee.

We both agree that no one trusts anything that Wyman says/may say about where that equipment may be located or what may have happened to it since the filing of the Petition. However, that will be the trustee's problem. Please NOTE: Wyman's 2004 exam was never concluded, only adjourned, so – if necessary or desirable – he can be recalled and put under oath to answer these issues.

## MET

**From:** MET <met@comcast.net>
**Sent:** Friday, June 20, 2014 4:03 PM
**To:** RODG@BRGPC.COM (RODG@BRGPC.COM)
**Subject:** FW: Mason et al v. Linck et al

**From:** Michael Olson [mailto:molson@mtolaw.com]
**Sent:** Thursday, June 19, 2014 2:08 PM
**To:** jill_mcfarlane@mieb.uscourts.gov; pamela_skillman@mieb.uscourts.gov
**Cc:** MET; David; Mary Figurski
**Subject:** Mason et al v. Linck et al

*Ms. McFarlane and Ms. Skillman:*

*I am happy to report that Mr. Linck has agreed to settle the claims made against him by both the Trustee, Mr. Mason and Barbara Duggan subject only to the execution of agreeable documentation. This settlement is global with respect to Mr. Linck but does not resolve the claims against Ms. Pichler. Mr. Tindall and I are currently working on the settlement documents. Mr. Linck, therefore, will not participate in the trial scheduled to start Monday, June 23, 2014. If necessary, I will appear on his behalf to articulate the settlement on the record unless Mr. Tindall and I are able to prepare and execute the appropriate documents before then, in which case Mr. Tindall will bring the necessary signed Dismissal for entry by the Court. Please let me know if you or the Judge has any questions.*

*Michael J. Olson*

***Michael J. Olson***
***Matecun, Thomas & Olson, PLC***

Lawyers Serving You, Your Family and Your Business.

*Visit us at:* www.MTOlaw.com

***Livingston County Office:***
915 N. Michigan Ave., Suite 6
Howell, Michigan 48843
Ph. (517) 548-7400
Cell. (517) 449-7762
Fax. (517) 548-7410
molson@mtolaw.com

## MET

| | |
|---|---|
| **From:** | Michael Olson <molson@mtolaw.com> |
| **Sent:** | Saturday, June 21, 2014 12:09 PM |
| **To:** | MET; David; jill_mcfarlane@mieb.uscourts.gov |
| **Cc:** | Mary Figurski |
| **Subject:** | Mason et al v Pichler et al |

Gentlemen and Ms. McFarlane:

As you know by now, Mr. Tindall and I have come to an agreement which settles all of the claims made against Mr. Linck. I will be appearing in Court on Monday to place that settlement on the record. I will, however, not be that right at 9:30 a.m. Something has come up in Livingston County which requires my appearance at 8:30. It should be quick but it may cause me to be a little late getting to Flint. Thanks for your understanding.

Mike.

***Michael J. Olson***
***Matecun, Thomas & Olson, PLC***

Lawyers Serving You, Your Family and Your Business.

*Visit us at:* *www.MTOlaw.com*

***Livingston County Office:***
915 N. Michigan Ave., Suite 6
Howell, Michigan 48843
Ph. (517) 548-7400
Cell. (517) 449-7762
Fax. (517) 548-7410
molson@mtolaw.com

***Macomb County Office:***
43570 Garfield, Suite 101
Clinton Township, Michigan 48038
Ph. (586) 948-9318
Fax. (586) 948-9314

2A

Memorandum of Land Contract executed on October 16, 2009
Mortgages executed by Pichler and Wyman
Checks from Linck for the purchase and refinance of the sale of the property in question

**(10) Objections to Exhibits:**

(Plaintiffs' position)

Plaintiffs' have filed their MOTION IN LIMINE to eliminate irrelevant documentary exhibits and witness testimony based on the prior rulings of this Court, and, the admissions of the Defendants.

In addition, Plaintiffs' will object to any document bearing the alleged date stamp of "11-25-09 14:44 RCD" alleged to have been made by the Livingston County Register of Deeds, and, any testimony seeking to validate or authenticate the alleged date stamp.

**(11) Damages:**

Compiled totals for: (1) attorney fees incurred in state court; and, (2) costs incurred – to date – in state and federal court. At this point, attorney fees incurred in federal court cannot be computed, as the matter is not concluded.

| | | |
|---|---|---|
| Attorney Fees: | | |
| Costs: | | $13,092.06 |
| State Service Fees | $ 110.65 | |
| State Filing Fees | $ 266.00 | |
| Records Searches | $1,801.10 | |
| County Recording fees | $ 131.00 | |
| Witness Fees | $ 755.00 | |
| Transcripts | $1,748.27 | |
| Pacer Charges | $ 49.70 | |
| Adversary Proceeding Filing Fees | $ 586.00 | $ 5,447.74 |
| Total | | $18,539.80 |
| Plus Mediation Fee | 200 | |
| | | $18,739.80 |

**(12) Trial:**

(A) Non-Jury

3

## MET

**From:** Rodney Glusac <rodg@brgpc.com>
**Sent:** Monday, July 28, 2014 3:59 PM
**To:** MET
**Cc:** MICHAEL MASON TRUSTEE; MICHAEL MASON 2
**Subject:** Wyman

Mike

Per our telephone conversation this afternoon, the Trustee authorizes you to do the following:

1. **Contact the builder interested in the subject property and negotiate the sale of the subject property on behalf of Ms. Duggan; and**
2. **Immediately take all steps to evict Mr. Wyman from the subject property and to secure and protect the subject property.**

I will discuss the issues concerning the personal property with the Trustee and will get back to you.

Thank you for your patience.

Rod

Rodney M. Glusac, Esq.
Bernardi, Ronayne & Glusac, P.C.
1058 Maple Street
Suite 100
Plymouth, Michigan 48170
Telephone: (734) 416-1780
Facsimile: (734) 416-1785
rodg@brgpc.com

This message is intended only for the use of the individual or entity to which it has been sent and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering this message to the intended recipient, you are notified that any dissemination, distribution, or copying of this message and any attachments is strictly prohibited. If you have received this message in error, please e-mail the sender and destroy all copies of this message and any attachment. Thank you.

**MET**

---

**From:** Rodney Glusac <rodg@brgpc.com>
**Sent:** Tuesday, July 29, 2014 11:03 AM
**To:** MET
**Cc:** Michael A. Mason; MICHAEL MASON TRUSTEE
**Subject:** RE: Wyman

Mike

Under the Bankruptcy Code, we can't abandon property to a specific person. If the property were to be abandoned, under the Bankruptcy Code it would revert to Wyman, and then Duggan would have to foreclose on her lien. I'm sure she doesn't want to go through that hassle.

Mike Mason will agree to sell the property to Duggan, with the consideration being that she will cover your 1/3 contingency fee owed by the estate, and the sale will also be subject to all liens and encumbrances on the property. Please discuss this with her and advise me if it acceptable. We can then put together a quick purchase agreement and I can prepare and file a motion to authorize the sale. Thanks.

Rod

Rodney M. Glusac, Esq.
Bernardi, Ronayne & Glusac, P.C.
1058 Maple Street
Suite 100
Plymouth, Michigan 48170
Telephone: (734) 416-1780
Facsimile: (734) 416-1785
rodg@brgpc.com

This message is intended only for the use of the individual or entity to which it has been sent and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering this message to the intended recipient, you are notified that any dissemination, distribution, or copying of this message and any attachments is strictly prohibited. If you have received this message in error, please e-mail the sender and destroy all copies of this message and any attachment. Thank you.

**From:** MET [mailto:met@comcast.net]
**Sent:** Monday, July 28, 2014 5:14 PM
**To:** 'Rodney Glusac'
**Cc:** MICHAEL MASON 2 ; MICHAEL MASON TRUSTEE ; BARB DUGGAN
**Subject:** RE: Wyman

Rod:

Please confirm, in writing, Trustee Mason's intention to abandon 1011 Jones Rd to Ms. Duggan and any conditions and/or limitations on such abandonment.

M. Tindall

## MET

**From:** Rodney Glusac <rodg@brgpc.com>
**Sent:** Monday, September 08, 2014 11:57 AM
**To:** MET
**Cc:** Sweet, Samual
**Subject:** Wyman

Mike

FYI Sam Sweet and I briefly discussed this matter this morning. He will be reviewing the pleadings, etc., and will probably schedule a conference call with us shortly.

Rod

Rodney M. Glusac, Esq.
Bernardi, Ronayne & Glusac, P.C.
1058 Maple Street
Suite 100
Plymouth, Michigan 48170
Telephone: (734) 416-1780
Facsimile: (734) 416-1785
rodg@brgpc.com

This message is intended only for the use of the individual or entity to which it has been sent and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering this message to the intended recipient, you are notified that any dissemination, distribution, or copying of this message and any attachments is strictly prohibited. If you have received this message in error, please e-mail the sender and destroy all copies of this message and any attachment. Thank you.



**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**IN RE:**

**CHRISTOPHER D. WYMAN**
***Debtor(s),***

**CASE NO. 12-32264**
**CHAPTER 7**
**HON: D. S. OPPERMAN**

\

**MICHAEL A. MASON, US BANKRUPTCY TRUSTEE And STATE COURT JUDGMNT CREDITOR BARBARA DUGGAN**
**Plaintiffs**

**ADVERSARY NO.12-03348**

**v.**

**MICHELLE PICHLER, a/k/a MICHELLE GENTRY; and, EDWARD LINCK**
**Defendants.**

\

**TINDALL LAW**
Attorneys for Creditor B. DUGGAN
And TRUSTEE MICHAEL A. MASON
**BY: MICHAEL E. TINDALL P29090**
**P.O, BOX 46564**
**MOUNT CLEMENS, MI 480436**
**(248) 250-8819**
**Direct Email: met@comcast.net**

\

## STIPULATED CONSENT JUDGMENT WITHOUT COSTS

In accordance with the Stipulation of Plaintiffs TRUSTEE MICHAEL A. MASON and BARBARA DUGGAN, and DEFENDANT EDWARD LINCK, by and through their respective counsel, pursuant to the terms of a certain SETTLEMENT AGREEMENT for the satisfaction thereof executed by and between the parties, **JUDGMENT** by **CONSENT** is hereby entered against DEFENDANT EDWARD LINCK, without costs, and, by signature of counsel for TRUSTEE MASON, is hereby acknowledged as fully satisfied.

**Signed on June 25, 2014**

**/s/ Daniel S. Opperman**
**Daniel S. Opperman**
**United States Bankruptcy Judge**

# OFFER TO PURCHASE REAL ESTATE

1. THE UNDERSIGNED hereby offers and agrees to purchase the following land situated in the TOWNSHIP of COHOCTAH LIVINGSTON County, Michigan, described as follows: SEC 24 & SEC 25, T4N-R4E, ... being commonly known as 1011 JONES together with all improvements and appurtenances, if any, now in or on the premises (unless specifically excepted herein), including all buildings, fixtures, built in appliances, all window treatments including hardware, attached floor coverings, attached fireplace doors, screens, gas logs, garage door opener and controls, screens, storm windows and doors, landscaping, fences and mailboxes, all ceiling fans, alarm system, radio and television antennas, rotors and controls, water softener (unless rented), water pumps, pressure tanks, fuel in tank, incinerator, if any, and gas, oil and mineral rights owned by Seller and to pay therefor the sum of Eighty-Two Thousand Dollars ($ 82,000.00) subject to the existing building and use restrictions, easements of record and zoning ordinances, if any, providing said restrictions, easements and zoning ordinances do not unreasonably restrict the Purchaser's intended use of the property; upon the following conditions:

THE SALE TO BE CONSUMMATED BY: ☒A ☐B ☐C ☐D OR ☐E

A. CASH SALE. Delivery of the usual Warranty Deed conveying a marketable title. Payment of purchase money is to be made by cash, cashier's or certified check.

B. CASH SALE WITH NEW MORTGAGE. Delivery of the usual Warranty Deed conveying a marketable title. Payment of purchase money is to be made by cash, cashier's or certified check. This agreement is contingent upon the Purchaser being able to secure a mortgage in the amount of $ ______ and pay $ ______ down plus mortgage costs, prepaid items, and adjustments in cash. Purchaser agrees to apply for such mortgage at his own expense within ______ calendar days from Seller's acceptance of this offer to purchase, or from the date Purchaser receives an acceptable inspection report pursuant to Paragraph 25 below if applicable, and execute the mortgage as soon as the mortgage application is approved and a Closing date is obtained from the lending institution. Purchaser agrees that in connection with said application to lender, he will promptly comply with lender's request for necessary information required to process the loan application and to make a good faith effort to obtain said mortgage. If a firm commitment for such mortgage cannot be obtained within ______ calendar days from the date of Seller's acceptance, at the Seller's written option, this offer may be declared null and void and the deposit shall be returned to Purchaser forthwith.

C. MORTGAGE ASSUMPTION (SIMPLE) OR LAND CONTRACT ASSIGNMENT. If the holder of the Mortgage or Land Contract agrees, Purchaser will assume and pay the existing Mortgage loan or Land Contract according to its terms. Purchaser will pay to Seller the difference between the sale price and the existing balance of approximately $ ______. At closing, Seller shall deliver a Warranty Deed which may be subject to such Mortgage or a Quit Claim Deed in the case of a Land Contract and, if applicable, a Land Contract Assignment. Purchaser will reimburse Seller at closing for any funds held in escrow by the lender or Seller, as the case may be. Purchaser has been provided with a copy of said Mortgage or Land Contract and understands the terms thereof.

D. SALE TO EXISTING MORTGAGE - REQUALIFICATION REQUIRED. Delivery of the usual Warranty Deed conveying a marketable title, subject to a mortgage. Payment of the purchase money is to be made by cash, cashier's or certified check less the amount owing upon an existing mortgage now on the premises, with accrued interest to date of consummation, held by ______ upon which there is unpaid the sum of approximately $ ______ with present interest at ______ percent, which mortgage requires present monthly payments of $ ______ which payments ☐ DO ☐ DO NOT include prepaid taxes and ☐ DO ☐ DO NOT include prepaid insurance. If existing mortgage is a balloon mortgage it must be paid in full or renegotiated with lender on or before ______. The existing mortgage requires an application by Purchaser to qualify for said assumption. Purchaser agrees to apply for such mortgage at his own expense within ______ calendar days from Seller's acceptance of this offer, or from the date Purchaser receives an acceptable inspection report pursuant to Paragraph 26 below if applicable. Purchaser agrees to promptly comply with lender's request for necessary information required to process the requalification loan application and to make a good faith effort to obtain said mortgage. If a firm commitment for such mortgage cannot be obtained within ______ calendar days from date of Seller's acceptance, at the Seller's written option, this offer can be declared null and void and the deposit returned to Purchaser forthwith. If the Seller has any accumulated funds held in escrow for the payment of any prepaid items, the Purchaser agrees to reimburse the Seller upon proper assignment of same. At closing, the Purchaser shall assume and agree to pay the existing mortgage according to its stated terms.

E. SALE ON LAND CONTRACT. Payment of the sum of $ ______, by cash, cashier's or certified check and the execution of a Land Contract in the amount of $ ______ on a universally accepted title company form acknowledging payment of that sum and calling for the payment of the remainder of the purchase money within ______ years from the date of closing of the Contract in monthly payments of not less than $ ______ each which include interest payments at the rate of ______ percent per annum and which ☐ DO ☐ DO NOT include prepaid taxes and which ☐ DO ☐ DO NOT include prepaid insurance.

2. The Seller shall deliver and the Purchaser shall accept possession of said property subject to the rights of the following tenants: N/A N/A (see additional conditions for description of tenant information, if applicable). If the Seller occupies the property it shall be vacated on or before 0 days after closing. Commencing the day after closing through the day of vacating the property as agreed, Seller shall pay the sum of $ .00 per day. The Broker shall retain from the amount due Seller at closing the sum of $ .00 as security for said occupancy charge, paying to the Purchaser the amount due him and returning to the Seller the unused portion as determined by date property is vacated and keys surrendered to Broker. Broker has no obligation implied or otherwise for seeing that the premises are vacated on the date specified or for the condition of the premises, etc., but is only acting as an escrow agent for holding the occupancy escrow funds.

3. The Broker is hereby authorized to make this offer and the deposit of $ 3,500.00 in the form of cash, cashier's check, certified check, personal check, promissory note shall be held by him according to the State of Michigan Statutes and Regulations (Act No. 299, P.A. of 1980 Sect. 2512 (1)(g)) and applied on the purchase price if the sale is consummated.

4. APPLICABLE TO V.A. OR F.H.A. SALES ONLY: It is expressly agreed that notwithstanding any other provisions of this contract, the Purchaser shall not be obligated to complete the purchase of the property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless the Purchaser has been given in accordance with HUD/FHA or VA requirements a written statement by the Federal Housing Commissioner, Secretary of Veterans Affairs, or a direct endorsement/authorized automatic lender setting forth the appraised value of the property of not less than $ ______. The Purchaser shall have the privilege and option of proceeding with the consummation of the Contract without regard to the amount of the appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development or Department of Veterans Affairs will insure. HUD/FHA, VA and the Direct Endorsement/Authorized Automatic Lender do not warrant the value nor the condition of the property. The Purchaser should satisfy himself/herself that the price and condition of the property are acceptable.

5. It is further understood between Purchaser and Seller that the additional personal property listed herein has a value of $ .00.

6. ADDITIONAL OFFERS. Upon Seller's written acceptance of the terms of any Offer to Purchase, Realtor/Broker shall not be required to present any other offers received after the date of acceptance, unless otherwise provided in this contract.

7. SELLER'S DISCLOSURE: Purchaser ☐ has ☒ has not received a copy of a Seller's Disclosure Statement setting forth certain conditions involving the property, and Seller acknowledges that said Statement is true and accurate to the best of Seller's knowledge.

8. AGENCY: By our signatures below, the parties hereby acknowledge that the Selling Broker and Salesperson(s) are designated agents of the ______ Buyer and/or ______ Seller. Buyer and Seller acknowledge that this ☐ is ☐ is not an in-house transaction in which the Buyer and Seller are each represented by different designated agents within. If this is an in-house transaction, the Broker and/or all named Supervisory Brokers are acting as Dual Agents.

ADDITIONAL CONDITIONS, if any: (Use reverse side if needed)
CONTINGENT UPON PURCHASERS SATISFACTORY HOME INSPECTION/WALK THROUGH. INSPECTION/WALK THROUGH TO BE COMPLETED WITHIN 48 HOURS AFTER COURT APPROVAL/ACCEPTANCE. CONTINGENT UPON PURCHASERS SATISFACTORY REVIEW OF TITLE WORK. CONTINGENT UPON APPROVAL OF OFFER BY THE COURT.

NOTE: GENERAL CONDITIONS of sale printed on reverse side are incorporated and made a part hereof. Purchaser and Seller shall initial the reverse side of this agreement.

By the execution of this instrument, the Purchaser acknowledges receipt of a copy of this agreement.

IN THE PRESENCE OF:

Witness ______ [signature] L.S.
MARCIA RIDDLE/RISON CONSTRUCTION Purchaser

Witness ______ ______ L.S.
Dated 7-15-14 Purchaser

Address 910 S ORTONVILLE RD #200 ORTONVILLE MI

BROKER'S ACKNOWLEDGEMENT OF DEPOSIT

Received from the above named Purchaser the deposit money above mentioned, which will be applied as indicated in Paragraphs 3' above and 17 reverse, or will be returned forthwith after tender if the foregoing offer and deposit is declined.

N/A Broker By N/A

ACCEPTANCE: By affixing Seller(s) signature(s) hereto, the Seller(s) accepts this offer and acknowledges receipt of a copy hereof. Seller further agrees that the Broker has procured said offer and has brought about this sale and agrees to pay Broker for services rendered a commission as set forth in the Listing Contract for sale of the property, or in the absence of said Listing Contract, a commission of 0 percent of the sale price stated above.

IN THE PRESENCE OF:

Witness ______ ______ L.S.
CHRISTOPHER D WYMAN - TRUSTEE Seller

Witness ______
Dated ______ FOR MICHAEL MASON BANKRUPT Estate - case NO. 12-32264
Address ______

The undersigned Purchaser hereby acknowledges receipt of a copy of the Seller's signed acceptance of the foregoing Offer to Purchase.

Dated ______ ______ L.S.
Purchaser

## GENERAL CONDITIONS OF SALE

9. As evidence of title, Seller agrees to furnish Purchaser at the time of closing, a commitment for a Policy of Title Insurance without standard exceptions in an amount not less than the purchase price, bearing date later than the acceptance hereof and guaranteeing the title in the condition required for the performance of this offer. Said Commitment of Title Insurance shall be converted to a Policy of Title Insurance subsequent to closing and forwarded to Purchaser as soon as all necessary documents have been processed and recorded to cause the issuance of a Policy of Title Insurance.

10. If this offer is accepted by Seller and title can be conveyed in the condition required hereunder, the Purchaser agrees to complete the sale within ten days after the issuance of the Commitment for Title Insurance. However, if the sale is to be consummated in accordance with Paragraph B or D, then closing will be as soon as the mortgage application is approved and a closing date can be obtained from the lender. The location of closing shall be determined by the Listing Broker or lending institution, if applicable.

11. If objection to title is made, based upon a written opinion of Purchaser's attorney that the title is not in the condition required for performance hereunder, the Seller shall have thirty days from the date he is notified in writing of the particular defects claimed, either to (1) make a good faith effort to remedy the title defect(s) or (2) obtain a Title Commitment insuring over said defect(s). The Purchaser agrees to complete the sale within ten days following delivery of the reissued Title Commitment. If the Seller is unable to remedy the title or obtain Title Insurance within the time specified, the deposit shall be refunded forthwith to Purchaser in full termination of this agreement, unless Purchaser elects to proceed with the sale accepting such title as Seller is able to convey.

12. In event of default by the Purchaser hereunder, the Seller may, at his option, elect to enforce the terms hereof or declare a forfeiture hereunder and retain the deposit as liquidated damages. In event of default by the Seller hereunder, the Purchaser may, at his option, elect to enforce the terms hereof, or demand and be entitled to an immediate refund of his entire deposit in full termination of this agreement.

13. All taxes and assessments which have become a lien upon the land, whether recorded or not recorded, at the date of closing shall be paid by the Seller. Excepting, however, those taxes which, pursuant to Michigan Public Act 80 of 1994 became a lien on December 31 of the year prior to the date of this agreement, and which first become due and payable on a date subsequent to the date of closing. Current taxes, if any, shall be prorated and adjusted as of the date of closing in accordance with the DUE DATE basis of the municipality or taxing unit in which the property is located on a 365 day basis. Interest, rents, insurance, condominium or association dues or fees shall be prorated and adjusted in a like manner. Broker may retain from the amount due Seller at closing, a minimum of two hundred ($200.00) dollars for water charges. (Based upon water usage of the community.) When the final water bill or reading is received, all water adjustments shall be made through the day of ☒ closing ☐ occupancy.

14. Purchaser and Seller hereby acknowledge notice of the fact that Broker may accept a fee or consideration with regard to the placement of an abstract, loan or mortgage, life, fire, theft, flood, title or other casualty or hazard insurance arising from this transaction and expressly consent thereto as required by Michigan Law. Purchaser shall pay the cost of recording the deed and/or security interests, all mortgage loan closing costs required by mortgagee.

15. By the execution of this agreement, the Purchaser acknowledges that he has examined the above described premises and is satisfied with the physical condition of structures thereon and is purchasing said real estate in an "AS IS CONDITION" and that neither the Seller nor Broker make any warranties as to the land and structure being purchased or the condition thereof. Purchaser acknowledges that he has inspected the premises covered hereby and that he is satisfied with its condition. Seller agrees to maintain the premises in the same condition as exists at time of acceptance of this offer until possession is delivered to Purchaser. In the event property herein has been winterized, it shall be the obligation and expense of the Seller to de-winterize same prior to closing.

16. Purchaser shall have the right to a walk-through inspection of the premises being purchased within twenty-four hours prior to closing in order to determine, among other things, if the premises and any personal property and equipment being purchased have been maintained and are in no worse condition at the time of closing than they were at the time this agreement was accepted by the Seller, normal wear and tear excepted.

17. It is understood and agreed between both Purchaser and Seller herein that in the event a balloon note or payment shall become due in any of the above methods of financing, or that in the event Purchaser elects to finance subject property through an Adjustable Rate Mortgage and future interest rates increase to the displeasure of Purchaser, that Broker(s) herein shall be held harmless of any wrongdoing or liability with regard to the possible "lack of availability" of favorable financing when said note or balloon payment becomes due or future adjustments occur in mortgage interest rates.

18. At all times under this agreement where certain time constraints are set forth, the parties have agreed that TIME IS OF THE ESSENCE and that no extensions of said time limits are expected or agreed to unless specifically agreed to in writing.

**19. This is a legal and binding document, and both Purchaser and Seller acknowledge that they have been advised to consult an attorney to protect their interests in this transaction. Where the transaction involves financial and tax consequences, the parties acknowledge that they have been advised to seek the advice of their accountant or financial advisor.**

20. This agreement supersedes any and all understandings and agreements and constitutes the entire agreement between the parties hereto and Broker (other than the listing/commission agreement) and no oral representations or statements shall be considered a part hereof.

21. If two or more persons execute this agreement as Purchaser or Seller their obligations hereunder shall be joint and several and the covenants herein shall bind and inure to the benefit of the personal representatives, administrators, successors and assigns of the respective parties. Whenever any words, including pronouns, are used herein in the masculine gender, they shall be construed as though they were also used in the feminine or neuter gender in all cases where they would so apply. Whenever any words, including pronouns, are used herein in the singular or plural form, they shall be read and construed in the plural or singular respectively, whenever they would so apply.

22. RISK OF LOSS. The Seller is responsible for any damage to the property, except for normal wear and tear, until the closing. If there is damage, the Purchaser has the option to cancel this agreement and the deposit shall be refunded to the Purchaser or he can proceed with the closing and either:
a. require that the Seller repair the damage before the closing; or
b. deduct from the purchase price a fair and reasonable estimate of the cost to repair the property.

23. Purchaser and Seller acknowledge that no representations, promises, guaranties, or warranties of any kind including, but not limited to, representations as to the condition of the premises were made by the Broker, his/her sales persons, other cooperating sales persons or persons associated with Broker.

24. In consideration of the Broker's effort to obtain the Seller's approval, it is understood that this offer is irrevocable for five (5) days from the date hereof, and if not accepted by the Seller within that time, the deposit shall be returned forthwith to the Purchaser. If the offer is accepted by the Seller, the Purchaser agrees to complete the purchase of said property within the time indicated above.

25. Purchasers ☒ DO ☐ DO NOT choose to have property privately inspected at their expense. (Note: Inspections required by FHA, VA, other lenders or municipalities are not made for, nor should they be relied upon by Purchasers.) If property is to be privately inspected, the following clause shall govern:
Sellers shall permit an inspector(s) of Purchaser's choosing to have access to the property for the purpose of inspecting and reporting upon the general physical condition of the property, and its plumbing, heating and electrical systems, air quality and verification of square footage. Purchaser assumes liability for any damage to Sellers property caused by such inspection. The inspection shall be concluded within ___2___ calendar days after acceptance of this offer. If the inspection discloses any defects in the property which results in the Purchasers having substantial cause to be dissatisfied with the current physical condition of the property and its systems, they shall notify the Sellers, in writing, within three calendar days following the inspection. Failure to notify Sellers of such defects within this time period shall constitute a waiver of this paragraph by the Purchasers and they shall take the property "AS IS."
If Sellers are notified of defects, they shall have ___2___ calendar days to (a) repair or provide for repair to the satisfaction of the Purchaser, or (b) declare their unwillingness to repair, in which case this Agreement shall be null and void and Purchaser's deposit shall be returned.
**Purchasers acknowledge that the Salesperson(s) have recommended that Purchasers obtain a private inspection.**

26. ☐ ARBITRATION. Any claim or demand of Seller(s), Purchaser(s), Broker(s), or Agent(s) or any of them, arising out of this Offer To Purchase but limited to any dispute over the disposition of any earnest money deposits or arising out of or related to the physical condition of any property covered by this Offer To Purchase, including without limitation, claims of fraud, misrepresentation, warranty and negligence, shall be settled in accordance with the rules, then in effect, adopted by the American Arbitration Association and the Michigan Association of REALTORS®. This is a separate voluntary agreement, between the Purchaser(s), Seller(s), and/or Broker(s). Failure to agree to arbitrate does not affect the validity of this Offer To Purchase. A judgment of any circuit court shall be rendered upon the award or determination made pursuant to this Offer To Purchase. This Offer To Purchase is specifically made subject to and incorporates the provisions of Michigan law governing arbitrations, MCL 600.5001; MSA 27A.5001, as amended, and the applicable court rules, MCR 3.602, as amended. The terms of this Offer To Purchase shall survive the closing.

The parties acknowledge that they understand that, by agreeing to binding arbitration, they have given up their right to a day in court and they understand the arbitration process and that the award of the arbitrator is final and conclusive and not appealable except for limited due process reasons as set forth in the Michigan law and court rules herein before set forth.

☒ The parties do not wish to agree at this time to arbitrate any future disputes.

27. FACSIMILE AUTHORITY. It is agreed to by the parties that offers, acceptances and notices required hereunder can be delivered by Facsimile (Fax) copy to the parties or their agents provided, a hard copy (originally signed copy) is mailed or delivered in a timely manner and the date and time of the receipt of the Fax shall be the date and time of said offer, acceptance or notice.

28. In the event Seller makes any written change in any of the terms and conditions of the offer presented by Purchaser, such changed terms and conditions shall constitute a counteroffer by Seller to Purchaser and which shall remain valid until ___NOON___ at ___7/31/14___, unless earlier withdrawn in writing, and shall require acceptance by the Purchaser by initialing each change before such date and time.

29. The following ADDENDUM(S) are attached hereto and made a part hereof: ___N/A___

ADDITIONAL CONDITIONS:

SELLER TO CREDIT PURCHASER $5,000.00 TOWARDS REAL ESTATE COMMISSIONS ETC. SELLER TO CREDIT PURCHASER $4,700.00 TOWARDS WELL AND ARSENIC WATER ISSUES PER THE ATTACHED WELL INFORMATION FROM LIVINGSTON COUNTY. CLOSING WITHIN 30 DAYS OF COURT APPROVAL. EARNEST MONEY DEPOSIT SHALL BE MAILED TO TRUSTEE UPON COURT APPROVAL/ACCEPTANCE OF OFFER. CASE NO. 12-32264 - MICHAEL MASON BANKRUPT ESTATE.

30. ATTORNEY REVIEW AND APPROVAL. Buyer Initial ☐ Yes ☐ No Seller Initial ☐ Yes ☐ No. This offer is contingent upon the review and approval by legal counsel of the buyer and/or the seller within ______ calendar days. Unless either attorney objects in writing in care of the listing or selling broker within the specified time frame, this contingency shall be deemed conclusively waived and removed from this offer to purchase. If either party does object within the specified time frame in writing in care of this listing or selling broker, then the transaction may be declared null and void and neither party shall have any further obligation to each other and the selling broker is authorized to release any and all earnest money deposited back to the buyer.

The parties hereto have read the GENERAL CONDITIONS of this contract and have affixed their initials as acknowledgement and acceptance:

Purchaser(s) initials: [initials] ______

Seller(s) initials: ______ ______

CASH ONLY IF ALL CheckLock™ SECURITY FEATURES LISTED ON BACK INDICATE NO TAMPERING OR COPYING

**Rison Construction, L.L.C.**
910 S. Ortonville Road, Ste. 200
Ortonville, MI 48462
(248) 627-2188

OXFORD BANK
Ortonville, Michigan 48462
74-433/724

10080

7/15/2014

PAY TO THE ORDER OF Christopher D Wyman, Trustee $ **3,500.00

Three Thousand Five Hundred and 00/100****************************************** DOLLARS

Christopher D Wyman, Trustee
for Michael Mason Bankrupt Estate
Case No 12-32264

MEMO EMD for 1011 Jones Rd, Howell, MI

⑈010080⑈ ⑆072404333⑆ 40⑈0568⑈70⑈

© 2011 INTUIT INC. # 542 1-800-433-6810

Rison Construction, L.L.C. 10080

Christopher D Wyman, Trustee 7/15/2014

| Date | Type | Reference | Original Amt. | Balance Due | Discount | Payment |
|---|---|---|---|---|---|---|
| 7/15/2014 | Bill | | 3,500.00 | 3,500.00 | | 3,500.00 |
| | | | | | Check Amount | 3,500.00 |

Oxford Bank EMD for 1011 Jones Rd, Howell, MI 3,500.00



**Livingston County Department of Public Health**

Environmental Health Division
2300 E. Grand River Ave.
Howell, MI 48843
517.546.9858 * 517.546.9853 FAX
co.livingston.mi.us/health

PERMIT #: **WEL2009-00123**
APPLIED: 6/10/2009
ISSUED: 6/16/2009
EXPIRES:

## Well Permit

**WEL**

SITE ADDRESS: **1011 W JONES RD HOWELL**
PARCEL NO.: **02-24-300-007**
TOWNSHIP: **Cohoctah Township**
SUBDIVISION:
LOT/PARCEL:
DIRECTIONS: OAKGROVE TO JONES - EAST

| OWNER | BUILDER | CONTRACTOR |
| --- | --- | --- |
| CHRISTOPHER WYMAN<br>1011 JONES RD<br>HOWELL MI 48855<br>PH1 517-376-0559 | | ADAMS WELL DRILLING<br>5893 STERLING DR<br>HOWELL MI 48843<br>PH1 517-545-7517 |

Environmental Sanitarian: Bob Paul    Issued Date: June 16, 2009

**Project Description:**

NOT APPROVED
Livingston County Department of Public Health
Name [signature]
Date 7/14/10

**Information:**

Type of Work: Replacement
Type of Water: Residential
Sewer Type: On-Site
Well First:

**Special Requirements:**

ALL WELL CONSTRUCTION ACTIVITIES SHALL COMPLY WITH PART 127, ACT 368, OF 1978, AS AMENDED, AND SECTION 400 OF THE LIVINGSTON COUNTY SANITARY CODE.

FINAL PERMIT APPROVAL CONTINGENT UPON SUBMITTAL OF ACCEPTABLE: 1. BACTERIOLOGY ANALYSIS, 2. NITRATE ANALYSIS, 3. ARSENIC ANALYSIS, 4. WELL RECORD, AND 5. WELL DRILLING NOTIFICATION.

IF ARSENIC IS DETECTED ABOVE THE DRINKING WATER STANDARD (0.010 MG/L), THE WELL SHALL NOT BE APPROVED UNTIL SUCH TIME AS 1. ACCEPTABLE WATER TREATMENT HAS BEEN INSTALLED AND PROVIDES WATER BELOW 0.010 MG/L, OR 2. A NEW WELL IS DRILLED AND PROVIDES WATER BELOW 0.010 MG/L. PLEASE CONTACT LCDPH TO DISCUSS OPTIONS AND REQUIREMENTS.
EXISTING WELL MUST BE PROPERLY ABANDONED ACCORDING TO R325.1662 -1665 OF GROUNDWATER QUALITY CONTROL, PART 127, ACT 368, P.A. 1978. INDICATE ON WELL LOG AS TO ABANDONMENT OF OLD WELL.

WELL LOG-OK 1/26/12AA

LAT / LONG ONLY, TO TWO DIGITS. LEFT MSG W/ ADAMS. BP 7/10/09

Hook up BP 8/14/09
UNABLE TO ACCESS TANK, ETC. CAP CONDUIT OK

Environmental Sanitarian:    Date Finaled:

COHOCTAH 24 1011 W. JONES WEL2009-00123



**LIVINGSTON COUNTY DEPARTMENT OF PUBLIC HEALTH**
ENVIRONMENTAL HEALTH DIVISION
2300 E. Grand River, Suite 102 • Howell, Michigan 48843-7578
(517) 546-9858 • FAX (517) 546-9853 www.lchd.org

**Application for Sewage Disposal and/or Water Supply Facilities**
**For Single, Two Family, Industrial, Commercial & Multiple Family Dwellings**

☐ Commercial ☐ New Construction Septic Permit #
☐ Residential ☒ Replacement Well Permit # 2009-00123

**I. LOCATION OF BUILDING** *Please Print or Type*

| | | |
|---|---|---|
| Address 1011 Jones Rd | City/Village Howell | Zip Code 48843 |
| Township COHOCTAH | Tax Code # 02-24-300-007 | Section # 24425 |
| Subdivision | Lot(s) # / Parcel # | Acreage 10 |

Directions OAKGROVE to JONE - EAST

**Residential only:**
Geo Thermal Heating/Cooling: yes ☐ no ☒ Type: If yes, must be included on site plan
# of bedrooms Den/Office proposed ☐ yes no ☐
Is plumbing elevation lower than the septic tank making it necessary to install a sewage lift pump? ☐ yes no ☐

**Commercial only:**
Business Name
Premise Usage # of Employees/Occupants
Max. Est. Daily Wastewater Flow How determined

**A. OWNER**
Name CHRISTOPHER WYMAN Phone: (517 376 0559
Address 1011 Jones Rd
City/State Howell 48855 Zip Code

**B. CONTRACTOR for Sewage Disposal System**
Name Phone: ( )
Address
City/State Zip Code

**C. CONTRACTOR for Water Supply**
Name Adams Well Drilling Phone: (517 [illegible]
Address 5893 STERLING DR
City/State Howell Zip Code 48843

**D. BUILDER**
Name Phone: ( )
Address
City/State Zip Code

I hereby apply for this permit and have authorization to do so. I understand this is a construction permit only and the sewage disposal system and/or well is not to be put into service until final written approval has been granted. I further state the information given herein is accurate and complete.

[signature] 6-10-9
Applicant's Signature Date

************************************For Office Use Only************************************

Receipt # 322009-676 Amount $ 175.00 Payer Christopher Wyman

rev 9-23-04 kaw

* REPLACEMENT WELL
N.W. CORNER OF PROPERTY
CULVERT
4' HIGH FENCE
PASTURE
TOOL SHED 10' X 16'
HEIGHT 14'
SEPTIC FIELD
POND
NEW WELL
HOUSE 2700 SQ.FT.
HEIGTH 20'
4" WELL
TO
Z WATER
331'
LOW LAND
10 ACRES
JONES RD.
APPROVED
Livingston County Department
of Public Health
Name
Date
POST DRILL
BOGUE CREEK
1011 Jones Rd
Chris Wyman
517 376-0559
STATE LAND
Cohoctah Twp
#02-24-300-007
NEW SITE PLAN

**Livingston County Department of Public Health**

Environmental Health Division
2300 E. Grand River Ave. Suite 102
Howell, MI 48843
517.546.9858 * 517.546.9853 FAX
www.lchd.org

7/13/2010

CHRISTOPHER WYMAN
1011 JONES RD
HOWELL, MI 48855

RE: Permit#: WEL2009-00123 Section #: 24 Cohoctah Township
Site Address: 1011 W JONES RD HOWELL

Please be advised that we are in the process of reviewing our files. The above referenced permit authorizing the construction of a water well supply for a single family dwelling was issued by the Livingston County Department of Public Health on June 16, 2009.

We are unable to approve the construction of your water supply and it will be placed in our files as "NOT APPROVED" until the following items are submitted to the health department.

**Submittal of a bacteriological water sample report**
Submittal of a safe coliform bacteria water sample has not been received. Your water should be considered unsafe to drink until a safe sample has been received. Contact a certified drinking water lab for sampling procedures and bottles.

**Submittal of a nitrate water sample report**
If sample has not been taken, contact a certified drinking water lab for sampling procedures and bottles. The acceptable limit for nitrate is less than 10 milligrams per liter (mg/l) as established by the United States Environmental Protection Agency.

**Submittal of a arsenic water sample report**
If sample has not been taken, contact a certified drinking water lab for sampling procedures and bottles. The acceptable limit for arsenic is .010 milligrams per liter (mg/l) as established by the United States Environmental Protection Agency.

Please provide a copy of the requested information along with either a copy of this letter or a note referencing your permit file number to my attention so that the information can be matched with the appropriate file.

If you have any questions regarding this matter, please feel free to contact me at (517) 546-9858. Thank you for your prompt attention in this matter.

Sincerely,

Environmental Sanitarian



**Brighton Analytical, L.L.C.**
**2105 Pless Drive**
**Brighton, Michigan 48116**
**Phone: (810) 229-7575 FAX: (810) 229-8650**
e-mail: bai-brighton@sbcglobal.net

Sample Date: 06/09/2009
Submit Date: 06/09/2009
Report Date: 06/09/2009

To: CD Wyman Incorporated
6241 W. Grand River
Brighton, MI 48114

BA Report Number: 3700
BA Sample ID: BR08510

Project Name: Jones Road
Project Number:
Sample ID: Rear Tap

| Parameters | Results | Units | DL | Method Reference | Analyst | Analysis Date |
|---|---|---|---|---|---|---|
| **Total Metal Analysis** | | | | | | |
| Total Sodium | 1300000 | ug/L | 1000 | EPA 200.8 rev5.4 | GW | 06/09/2009 |
| Metal Drinking Water(digestion) | Digested | | | 3015 | LS | 06/09/2009 |

DL=Reported detection limit for analytical method requested. Some compounds require special analytical methods to achieve MDEQ designated target detection limits (TDL).

Released by:

Date: 6/9/09

Sodium not certified under EPA 200.8 by MI DEQ.
Analysis not specifically identified as drinking water are for non-regulatory compliance purposes.



# Water Well And Pump Record

Completion is required under authority of Part 127 Act 368 PA 1978.
Failure to comply is a misdemeanor.

Import ID:

Tax No: 02-24-300-007 | Permit No: WEL2009-00123 | County: Livingston | Township: Cohoctah

Town/Range: 04N 04E | Section: 24 | Well Status: Active | WSSN: | Source ID/Well No:

## Well ID: 47000028582

Elevation:

Latitude: 42.719596

Longitude: -83.948125

Method of Collection: Address Matching-House Number

Distance and Direction from Road Intersection: NORTH OF FISHER ROAD, WEST OF JONES ROAD.

Well Owner: CHRIS WYMAN

Well Address: 1011 JONES ROAD HOWELL, MI 48843

Owner Address: 1011 JONES ROAD HOWELL, MI 48843

Drilling Method: Rotary
Well Depth: 56.00 ft. Well Use: Household
Well Type: Replacement Date Completed: 6/15/2009
Casing Type: PVC plastic Height: 1.00 ft. above grade
Casing Joint: Solvent welded/glued
Casing Fitting: None

Diameter: 5.00 in. to 52.00 ft. depth SDR: 21.00

Borehole: 8.50 in. to 56.00 ft. depth

Pump Installed: Yes Pump Installation Only: No
Pump Installation Date: 6/15/2009 HP: 0.50
Manufacturer: Franklin Electric Pump Type: Submersible
Model Number: .5 Pump Capacity: 10 GPM
Drop Pipe Length: 40.00 ft. Pump Voltage:
Drop Pipe Diameter: 1.00 in. Drilling Record ID:
Draw Down Seal Used: No

Pressure Tank Installed: Yes
Pressure Tank Type: Diaphragm/bladder
Manufacturer: Well-X-Trol
Model Number: WR-120 Tank Capacity: 33.0 Gallons
Pressure Relief Valve Installed: Yes

Static Water Level: 2.00 ft. Above Grade (Flowing)
Well Yield Test: Yield Test Method: Air
1.00 hrs. at 100 GPM

Unrestricted Flow Rate:

Screen Installed: Yes Filter Packed: No
Screen Diameter: 4.00 in. Blank:
Screen Material Type: Stainless steel-wire wrapped

| Slot | Length | Set Between |
|---|---|---|
| 7.00 | 4.00 ft. | 52.00 ft. and 56.00 ft. |

Fittings: Neoprene packer

| Formation Description | Thickness | Depth to Bottom |
|---|---|---|
| Dark Gray Clay | 6.00 | 6.00 |
| Brown Clay & Sand | 4.00 | 10.00 |
| Gray Clay & Sand | 6.00 | 16.00 |
| Red Clay & Sand | 2.00 | 18.00 |
| Gray Clay & Sand | 24.00 | 42.00 |
| Gray Sand & Silt Fine | 4.00 | 46.00 |
| Gray Sand Fine | 10.00 | 56.00 |
| Gray Clay | 2.00 | 58.00 |

Well Grouted: Yes Grouting Method: Grout pipe outside casing

| Grouting Material | Bags | Additives | Depth |
|---|---|---|---|
| Bentonite slurry | 8.00 | None | 0.00 ft. to 46.00 ft. |

Geology Remarks:

Wellhead Completion: Pitless adapter

Nearest Source of Possible Contamination:

| Type | Distance | Direction |
|---|---|---|
| Septic tank | 80 ft. | North |

Drilling Machine Operator Name: GREG ADAMS
Employment: Employee
Pump Installer: RYAN ADAMS
Contractor Type: Water Well Drilling Contractor Reg No: 1861
Business Name: Adams Well Drilling
Business Address: 5893 Sterling Drive, Howell, MI, 48843

Abandoned Well Plugged: No
Reason Not Plugged: Well still in use for non-drinking water purposes

### Water Well Contractor's Certification

This well was drilled under my supervision and this report is true to the best of my knowledge and belief.

Signature of Registered Contractor Date

General Remarks:

Other Remarks:

EQP-2017 (4/2010) Page 1 of 1 Contractor 6/15/2009 3:33 PM

CASE NO 12-32264

# EXHIBIT C

# QUIT CLAIM DEED

**EDWARD LINCK, a single man "GRANTOR"** whose address is 1829 Hanover ~~1825 Andover Rd.~~, Ann Arbor MI **Quitclaims and assigns to: TRUSTEE MICHAEL A. MASON, Trustee of the Bankruptcy Estate of Cristopher D. Wyman, E. D. Michigan Case No. 12-32264, "GRANTEE"**, whose address is: c/o MICHAEL E. TINDALL ESQ., P.O. Box 46564, Mount Clemens MI 48046 the premises in the city of Howell, County of Livingston. state of Michigan, described in attached Exhibit 1, commonly known as 1101 Jones Rd., Howell MI 48843. Tax ID#: 4702-24-300-07, together with all right title and interest in and to a certain MORTGAGE thereon, dated October 17, 2009, executed by MICHELLE PICHLER, a single woman, and recorded at 2010R-022922, Livingston County Records, together with singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining. for the sum of: $1.00 and other good and valuable consideration including the release and dismissal of all claims between them in Case No. 12-03348, U.S. Bankruptcy Coourt, E.D. Michigan.

Dated: this 20th day of June. 2014

Signed:

[signature]

[signature]

[signature]
EDWARD LINCK

**STATE OF MICHIGAN)**
**LIVINGSTON COUNTY)**

The person(s) known to me to be EDWARD LINCK, personally appeared before me, a notary public in and for the above named county, and executed and acknowledged the foregoing document on 20th June, 2014, of their/his/her own free act and deed.

MARY FIGURSKI
NOTARY PUBLIC
LIVINGSTON COUNTY
STATE OF MICHIGAN
MY COMM EXPIRES 12/10/2018
ACTING IN LIVINGSTON COUNTY

[signature]
Notary Public, Livingston County    My commission expires: 12/10/2018

**Drafted by and when recorded, return to: MICHAEL E. TINDALL, ESQ., P.O. BOX 46564, MT. CLEMENS MI 48946**

**THIS TRANSFER EXEMPT PURSUANT TO MCL 207.526(a), (c), (d).**

EXHIBIT "A"

Part of the Southwest 1/4 of Section 24, Town 4 North, Range 4 East, and part of the Northwest 1/4 of Section 25, Town 4 North, Range 4 East, more particularly described as follows: Commencing at the Southwest corner of said Section 24; thence North 03 degrees 46 minutes 16 seconds West 1298.63 feet (previously recorded as North 00 degrees 45 minutes 00 seconds West 1298.33 feet); thence along the centerline of Jones Road (66 foot wide Right of Way), North 88 degrees 04 minutes 34 seconds East 183.87 feet (previously recorded as South 89 degrees 29 minutes 00 seconds East 184.60 feet) to the Point of Beginning of the parcel to be described; thence continuing along said line North 88 degrees 04 minutes 34 seconds East (previously recorded as South 89 degrees 25 minutes 00 seconds East) 331.21 feet; thence South 01 degree 58 minutes 26 seconds East 1324.84 feet; thence South 88 degrees 10 minutes 34 seconds West 331.21 feet; thence North 01 degree 58 minutes 26 seconds West 1324.26 feet to the Point of Beginning, subject to the rights of the public over the existing Jones Road. Also subject to any other easements or restriction of record.

1011 East Jones Road

Tax I.D. No.: 02-24-300-007

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FILED '18 DEC 18 AM10:39
US BANKRUPTCY MIE-DET

IN RE:
**CHRISTOPHER D. WYMAN**
*Debtor(s),*

**CASE NO. 12-32264**
**CHAPTER 7**

______________________________\

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the following:

Creditor's RESPONSE TO MOTION TO AMEND was served by US Mail and email transmission on December 18, 2018, upon:

Samuel D. Sweet (P48668)
Chapter 7 Trustee
PO Box 757
Ortonville, MI 48462-0757
ssweet@trusteesweet.us

Respectfully Submitted,

/s/
MICHAEL E. TINDALL
18530 MACK AVE., STE 430
DETROIT, MI 48236
(248)250-8819
**Direct Email: met@comcast.net**

Dated: 12/18/18