UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – FLINT

IN RE:

CHRISTOPHER D. WYMAN,
Debtor.
_____/

Case No. 12-32264-dof
Chapter 7 Proceeding
Hon. Daniel S. Opperman

OPINION REGARDING APPLICATION FOR
PAYMENT OF PRE-APPROVED ATTORNEY FEES
OF SPECIAL COUNSEL TO TRUSTEE PURSUANT TO 11 U.S.C. § 328(a)

Special Counsel for the Chapter 7 Trustee requests the Court to issue an order to pay his attorney fees. The Trustee objects to this request for numerous reasons. For the reasons stated in this Opinion, the Court concludes that Special Counsel is entitled to no more than $21,869.33, less amounts attributed to the Trustee's efforts to complete the sale of assets and subordination of claims for the benefit of the estate.

Jurisdiction

This Court has subject matter jurisdiction over this proceeding under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1) and E.D. Mich. LR 83.50(a). This is a core proceeding pursuant to 27 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate).

Findings of Fact

Shortly after the Debtor filed his Chapter 7 Petition, Michael Tindall, who represented Barbara Duggan, a creditor of the Debtor, contacted the Chapter 7 Trustee, Michael Mason, to inform him about possible avoidable transfers of real and personal property of the Debtor. Mr. Mason was already represented by counsel, but he reached an understanding with Mr. Tindall to allow Mr. Tindall and his law firm, Tindall Law Firm, (collectively "Tindall") to represent Mr. Mason and the estate as special counsel for a limited purpose. Accordingly, Mr. Mason, through counsel, filed an Application for Approval of Employment of Tindall Law Firm as Special Counsel for the Estate on July 16, 2012 ("Application"). Pertinent portions of this Application state:

1

2. That one of the potential assets in this bankruptcy estate consists of possible avoidable transfers. Said claims arose prior to the filing of this bankruptcy estate and Attorney Michael E. Tindall and the Tindall Law Firm was pursuing avoidance of the transfers on behalf of Creditor Barbara Duggan and will continue to represent her in this bankruptcy proceeding, which may include the following:

    a. Objections to the dischargeability of the debts owing to Ms. Duggan under 11 U.S.C. § 523(a).
    b. Objections to discharge under 11 U.S.C. § 727.
    c. Objections to Proofs of Claim.
    d. Other actions that do not conflict with Attorney Michael E. Tindall and/or the Tindall Law Firm's duties and obligations as special counsel to the Trustee.

The aforementioned do not constitute an actual conflict of interest, and thus under 11 U.S.C. § 327(c) Attorney Michael E. Tindall and the Tindall Law Firm may be employed by the Trustee as his special counsel for the limited purposes of pursuing the avoidance of transfers. This representation as special counsel to Trustee shall not limit or restrict the ability of Attorney Michael E. Tindall or the Tindall Law Firm to continue to represent Creditor Barbara Duggan in this or any other court or proceeding. Michael E. Tindall and the Tindall Law Firm are duly qualified to practice law in the Courts of the State of Michigan.

3. Because the Tindall Law Firm and Michael E. Tindall were pursuing avoidance of various transfers, pre-filing, the employment of the Law Firm would be in the best interest of the Bankruptcy Estate and Applicant is therefore requesting authority to hire the Tindall Law Firm of Box 46564, Mount Clemens, MI 48046 (PH 313-638-7613) to represent the estate in these matters. Said law firm is willing to represent the bankruptcy estate with same to be compensated, pursuant to 11 U.S.C. 328 (a), as follows: The law firm will be reimbursed for its costs from any recovery and will be allowed a fee of one third (1/3) of any recovery after deducting all costs incurred, pre and post filing.

. . .

5. The law firm has been informed and understands that no settlement of the controversy insofar as it relates to the bankruptcy estate's interest in same may be consummated until after a notice and a hearing and approval by the Bankruptcy Court and that fees and costs may be paid only upon entry of a Bankruptcy Court order.

6. Said law firm is aware of the provisions of 11 USC 328(a) and has agreed, notwithstanding the terms and conditions of employment herein set forth, that the Court may allow compensation different from the compensation provided herein if such terms and conditions prove to have been improvident in light of

developments not capable of being anticipated at the time of the fixing of such terms and conditions.

The Declaration of Disinterestedness of the Tindall Law Firm was attached to the Application and states in part:

> 3. The Trustee's application to employ has been read by the Tindall Law Firm and the law firm agrees to accept said employment on the terms and conditions contained in the Trustee's Application.

This Declaration was signed by Mr. Tindall. After approval of the employment by the United States Trustee, the Court entered an Order Approving Application for Employment of Tindall Law Firm as Special Counsel for the Estate on July 18, 2012 ("Employment Order"). The Employment Order states:

> IT IS HEREBY ORDERED that Michael A. Mason's employment of Michael E. Tindall and the Tindall Law Firm ("Firm") pursuant to 11 U.S.C. 327 on the terms and conditions contained in the Trustee's Application is approved.
>
> IT IS FURTHER ORDERED that the Court may allow compensation different from the compensation provided in the Trustee's application if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of said terms and conditions and that any fees and costs will not be paid without prior Court approval.

Tindall filed adversary proceedings to avoid the transfer of real estate located at 1011 Jones Road, Howell, Michigan and assorted construction machinery, equipment, tools, and miscellaneous items ("Personal Property") on behalf of the estate and Ms. Duggan. The Defendants in these actions aggressively defended these adversary proceedings, resulting in protracted and contentious litigation.

Ultimately, however, through negotiations by Samuel Sweet the successor Trustee to Mr. Mason, 1101 Jones Road was returned to the Trustee, as well as some of the Personal Property. Mr. Sweet then sold 1011 Jones Road for a net amount of $65,607.98 and included the Personal Property as part of the settlement of the adversary proceedings. But Tindall did not see this result to the end. On September 20, 2017, Mr. Tindall was disbarred and therefore unable to represent

Mr. Sweet. Despite that set back, Mr. Sweet brought these assets into the estate, settled the adversary proceedings, and sold 1011 Jones Road.

Mr. Tindall reappeared as an interested party to contest the sale of 1011 Jones Road, this time as a partial assignee of Ms. Duggan's claim and later on his own behalf as a claimant for his attorney fees and costs. Mr. Sweet has closed the sale of 1011 Jones Road, disbursed funds to Ms. Duggan, and negotiated a subordination of tax claim with Livingston County that created funds to pay administrative claims. Mr. Tindall has one of these administrative claims. To that end, Mr. Tindall has filed two documents: a Notice of Claim of Interest ("Notice") and the Application.

The Notice states:

### NOTICE OF CLAIM OF INTEREST

Please take notice that MICHAEL E. TINDALL, acting in pro per as sole successor in interest to TINDALL LAW, claims the below listed and described interest(s) in the real property commonly known as 1011 East Jones Road, Township of Cohoctah, County of Livingston, State of Michigan, Tax Id No. 02-24-300-007, more fully described in attached Exhibit 1, and any and all proceeds of or from the sale of such real property by Trustee Samuel D. Sweet, bankruptcy trustee in Chapter 7 Case No. 12-32264-dof, In re CHRISTOPHER D. WYMAN, DEBTOR, pursuant to that certain agreement of sale dated June 14, 2018 and approved by Order of sale dated July 5, 2018.

1. Fifty (50%) percent ($15,500.00) of all proceeds ($32,000.00) of a certain Judgment entered April 24, 2012 in favor of Barbara Duggan by the 53rd District Court and perfected by Judgment Lien dated May 3, 2012 and recorded at 2012R-015343, Livingston County Records.

2. Thirty Three (33%) ($21,710.00) of the sale price of the property ($65,000.00) by the Bankruptcy Trustee, pursuant to paragraph 3 of the Agreement attached as Exhibit 2 and the Order approving same attached as Exhibit 3.

3. Thirty Three (33%) ($16,700.00) of the value ($50,000.00) of certain equipment to be transferred and included in the July 14, 2018, under paragraph 5 of Addendum 1 thereof, pursuant to paragraph 3 of the Agreement attached as Exhibit 2 and the Order approving same attached as Exhibit 3.

Actual and constructive notice of the interest(s) claimed herein is hereby given to all concerned parties and to SELECT TITLE CO. of Brighton, MI, on this date.

4

12-32264-dof    Doc 285    Filed 09/23/19    Entered 09/23/19 11:44:53    Page 4 of 10

In turn, the Application states that 1011 Jones Road sold for $65,000.00, that Ms. Duggan had an allowed secured claim of $32,288.91, which Mr. Sweet paid, that Ms. Duggan has paid post petition attorney fees of $28,642.93 which Mr. Tindall apparently asserts she should be paid as a secured creditor under Section 506(b), and that Mr. Sweet currently holds $31,904.82 subject to his fees. Finally, Mr. Tindall asserts that he is entitled to a 1/3 contingency fee of $34,410.00 based on values determined by Mr. Sweet.

Mr. Sweet disputes that Mr. Tindall is entitled to $34,000.00 because his efforts and the result do not warrant such award. Moreover, Mr. Sweet argues that Mr. Tindall has a conflict of interest given his representation of Ms. Duggan and that his claim that she is entitled to attorney fees is unwarranted and is in conflict with Mr. Tindall's and the estate's interest. Moreover, Mr. Sweet pointed out that 1/3 of $65,607.98 is $21,869.33, not $34,100.00.

<u>Applicable Statute</u>

11 U.S.C. § 328(a) states:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

<u>Analysis</u>

The Application and responses raise a myriad of issues, some of which will remain unanswered. The Court addresses the issue of whether Section 328 applies, the effect of the disbarment of Mr. Tindall, and the range of fees Mr. Tindall may receive.

I.  Applicability of 11 U.S.C. § 328 and Terms of Employment

Section 328(a) allows a trustee to employ an attorney on a contingent fee basis but allows a court to award different compensation under different circumstances. The Sixth Circuit Court

5

of Appeals in *Nischwitz v. Miskovic (In re Airspect Air, Inc.)*, 385 F.3d 915 (6th Cir. 2004) addressed whether the bankruptcy court pre approved a contingency arrangement. As the *Airspect* Court held:

> We hold that whether a court "pre-approves" a fee arrangement under § 328 should be judged by the totality of the circumstances, looking at both the application and the bankruptcy court's order. Factors in the determination may include whether the debtor's motion for appointment specifically requested fee pre-approval, whether the court's order assessed the reasonableness of the fee, and whether either the order or the motion expressly invoked § 328.

*Airspect*, 385 F.3d at 922.

Applying *Airspect* to this case, at least two conditions are clear: Mr. Tindall is entitled to a 1/3 contingency fee and this amount may be different. All the relevant papers – the Application, Declaration and Employment Order – state as much. So assuming Mr. Tindall is entitled to a 1/3 contingency fee, the Court must next turn to the calculation and adjustment, if any, of his fee.

II.  Basic Calculation of Contingency Fee

Generally, a contingency fee calculation starts with a deduction for expenses and costs and then multiplying the appropriate rate. *In re McInerney*, 528 B.R. 684, 695-96 (Bankr. E.D. Mich. 2014). Here, Mr. Tindall has not requested any expenses or costs. But the parties cannot agree on the starting amount: Mr. Tindall argues that the amount should be the <u>value</u> of the property, which he claims Mr. Sweet pegged as much higher. Mr. Sweet argues the starting amount is the sale proceeds of 1011 Jones Road in the amount of $65,607.98.

The Court finds and holds that $65,607.98 is the proper starting amount. First, this is the actual amount that the Trustee realized on the sale of the property and makes the calculation certain and exact. The sale terms, condition and price were noticed to all creditors and interested parties and approved by this Court. If the sale price was too low, all had an opportunity to object.

Second, calculation of a contingent fee on the value of an asset is a speculative proposition. Value is in the eye of the beholder, but cash is in the hands of the Trustee and is the benchmark currency that is historically used to award compensation.

Third, relying on the actual sale price avoids mischief of using an inflated value number to calculate fees. While not evident or argued in this case, the Court can easily imagine a situation where a contingent fee is calculated on an inflated number, with a disappointedly small dividend to creditors after an asset is sold.[1]

III.   Effect of Disbarment of Mr. Tindall

Tindall did not see the case or adversary proceedings to completion. Instead, Mr. Sweet had to finish the negotiations to settle the adversary proceedings and sell the property. Also, Mr. Sweet, on his own and long after Mr. Tindall was disbarred, negotiated the subordination of the Livingston County debt that created the $31,904.82 now available to pay administrative claims such as Mr. Tindall's. *In re McInerney*, a case cited by Mr. Tindall at oral argument is instructive. The *McInerney* Court was faced with a similar situation in that the then Chapter 11 debtor hired counsel on a contingency basis to continue litigation, but the debtor converted to Chapter 7. The Chapter 7 Trustee hired new counsel and settled the litigation. The *McInerney* Court concluded that the Chapter 11 counsel was entitled to compensation for the reasonable value of its services on the basis of quantum meruit. *McInerney*, 528 B.R. at 691 (citing *Morris v. City of Detroit*, 189 Mich. App. 271, 471 N.W.2d 43, 47 (1991); *Island Lake Arbors Condominium Assn. v. Meisner & Associates, P.C.*, 301 Mich. App. 384, 837 N.W.2d 439, 440, 445-48 (2013)). *Morris, Meisner and McInerney* all give guidance to this Court. First, *Morris*:

> [I]n this case [the attorney], who had entered into [a contingent fee] agreement, was discharged before completing one hundred percent of the services contracted for under the contingency fee agreement. Therefore, the contingency fee agreement no longer operated to determine [the attorney's] fee, and [he] was entitled to compensation for the reasonable value of his services on the basis of quantum meruit, provided that his discharge was wrongful or his withdrawal was with cause.
>
> . . .

---

[1] If needed, the Court would also invoke the language in Section 328, the Application, the Declaration, and the Employment Order and find that the development that later occurred was such that use of value, as opposed to the actual sale price, compels the Court to use the actual sale price as the appropriate starting amount to calculate the contingent fee.

We recognize that there is no precise formula for assessing the reasonableness of an attorney's fee. Nevertheless, in *Crawley v. Schick*, 48 Mich. App. 728, 737, 211 N.W.2d 217 (1973), this Court enumerated several nonexclusive factors appropriately considered for such a determination, including:

> (1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client.

While the trial court should consider these factors, its decision need not be limited to these guidelines.

. . .

We believe that the trial court may also properly consider that the attorney originally agreed to render service on a contingency basis. Such a consideration would allow the court to consider the degree of risk undertaken by an attorney who was prematurely discharged. Accordingly, it would be appropriate for the court to award the attorney a larger fee, provided that the fee was not in excess of that permitted under MCR 8.121. An award of attorney fees will be upheld on appeal unless the trial court's determination of the "reasonableness" issue was an abuse of discretion.

*Morris*, 471 N.W.2d at 47-48.

Next, *Meisner*:

In this case of first impression, we hold that the quantum meruit recovery of a discharged attorney is capped by the contingency-fee percentage set forth in the contract, applied to the amount of the recovery attributable to the attorney's work.

. . .

On remand, the fact finder must determine how much money Meisner is owed. The *Reynolds* Court instructed, "[Q]uantum meruit is generally determined by simply multiplying the number of hours worked by a reasonable hourly fee." *Reynolds [v. Polen]*, 222 Mich. App. [20] at 28, 564 N.W.2d 467 [ (1997) ]. However, the *Reynolds* Court then specifically referred to the portions of *Morris* and *Plunkett [& Cooney, P.C. v. Capitol Bancorp Ltd.,* 212 Mich. App. 325, 536 N.W.2d 886 (1995) ] directing that the contractual terms must also govern reasonable compensation for services rendered. In this case, as in *Morris*, those terms included a contingency arrangement. Thus, we emphasize that it would be inappropriate to calculate Meisner's quantum meruit recovery on the basis of the number of hours worked multiplied by a reasonable hourly fee. In their contract, the parties deliberately spurned an arrangement based solely on an hourly fee, and instead agreed that if it completed the work, Meisner would share a percentage of the recovery. Since Meisner's hourly fees have been paid, the remaining fact to be determined is the portion of the ultimate recovery attributable to Meisner's contribution.

8

> **After the cash value of the settlement has been determined according to the method set forth in Meisner's contract with [the client], the fact finder must consider and compare the contributions to that recovery made by both Meisner and successor counsel. Once that determination has been made, Meisner is entitled to 12 percent of the recovery attributable to Meisner**. This method comports with the meaning of quantum meruit: " 'as much as deserved.' " … It also compensates Meisner according to the "actual deal struck between the client and the attorney[.]" *Reynolds*, 222 Mich. App. at 30, 564 N.W.2d 467. The bargained-for-value percentage memorialized in the contract governs Meisner's recovery, which flows from Meisner's contribution to the outcome. [2]

*Meisner*, 837 N.W.2d at 446-49 (emphasis added).

Finally, in *McInerney*, where the Trustee's counsel obtained a $1,000,000 settlement:

> The Ackerman Firm, through Alan Ackerman, therefore, has admitted that the less generous method of calculating the contingent fee, as one-third of the net recovery, as argued by the objecting creditors, is the correct method under the Ackerman Firm's retainer agreement.
>
> Applying that method of calculation, the *maximum* quantum meruit fee that the Ackerman Firm could obtain under Michigan law, even if the entire $1 million settlement recovery in the Becker Action were viewed as 100% attributable to the Ackerman Firm, is a total of $356,212.85 for fees and expenses. The Trustee's proposed settlement would pay the Ackerman Firm $361,118.00 in fees and expenses, and therefore exceeds, by *at least* $4,905.15, the absolute maximum that the Ackerman Firm could obtain without the settlement.
>
> But the $1 million settlement recovery is *not* 100% attributable to the work of the Ackerman Firm, as compared to the portion that is attributable to the work done by the Trustee's counsel after this case converted to Chapter 7. The Ackerman Firms' work no doubt substantially contributed to the ultimate $1 million settlement recovery. But so did the work of the Trustee's counsel. So the Trustee's proposed settlement amount substantially exceeds recovery that the Ackerman Firm could obtain under Michigan law quantum meruit principles.

*McInerney*, 528 B.R. at 696.

Applying these concepts to this case, the Court cannot determine how much of the $65,607.98 was attributable to Mr. Tindall and to Mr. Sweet. The Court can determine that Mr. Tindall is not entitled to more than $21,869.33 ($65,607.98 x 1/3) and that amount may be reduced by the *Morris, Meisner* and *McInerney* formulas, as well as other factors as argued by Mr. Sweet.

---

[2] Meisner agreed to a reduced hourly rate and a 12% contingent fee

Conclusion

Mr. Tindall's Application can be granted in part because he is entitled to some compensation, but no more than $21,869.33, less whatever amount is attributable to the Trustee's efforts to complete the sale of assets and subordination of claims. The Court sets a telephonic status conference for *Wednesday, October 9, 2019 at 1:30 p.m.* so that the parties can discuss a plan to address the remaining issues.

**Not for Publication**

**Signed on September 23, 2019**



/s/ Daniel S. Opperman
Daniel S. Opperman
United States Bankruptcy Judge