**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**IN RE:**
**CHRISTOPHER D. WYMAN**
***Debtor(s),***

**CASE NO. 12-32264**

**CHAPTER 7**

______________________________\

**CLAIMANT'S REPLY IN SUPPORT OF COMBINED MOTION AND BRIEF TO VACATE VOID INTERLOCUTORY ORDER PUPORTING TO SUBORDINATE MICHIGAN AD-VALOREM REAL ESTATE TAXES UNDER 11 USC 724 DUE TO LACK OF JUDICIAL POWER AND FRAUD**

MICHAEL E. TINDALL, (hereinafter "Claimant"), Assignee of all [100%] claims of BARBARA DUGGAN ($32,240.34), and a party in interest holding a secured attorney lien ($34,100.00/$21,869.33) against the proceeds of the Realty (hereinafter collectively "allowed secured claim"), and for his REPLY to Sweet's RESPONSE, DE 331, States:

On October 27, 2020, Trustee Sweet filed DE 331, purporting to respond to Claimant's MOTION TO VACATE.

1. Sweet does NOT deny filing DE 221.
2. Sweet does NOT deny that Michigan real property taxes are ad-valorem taxes.
3. Sweet does NOT deny that ad valorem taxes may NOT be subordinated under 11 USC 724.
4. Sweet does NOT deny the prohibition on subordination of ad valorem taxes, under Section 724, has existed for 15 years, since 2005.

5. Sweet does NOT deny that Livingston County filed no claim in this bankruptcy for property taxes.
6. Sweet does NOT deny that no claim, secured or unsecured, exists in the Claims Register, or, has been allowed by this Court.
7. Sweet does Not deny actual knowledge of these facts at the time he fraudulently filed DE 221.

Relying on an inadmissible Affidavit of his own[1], Sweet attempts to "**double down**" on his initial fraudulent representations with additional fraudulent representations that: (a) Livingston County "consented" to subordination; (b) secured proceeds would be distributed to Livingston County instead of Claimant; and, (c) Claimant therefore lacks "constitutional standing" to challenge the subject order. The attached, Exhibit 1, copy of Case No. 20-03012, DE 20, clearly shows Sweet's unsupported fraudulent representations are false, and, that he knew it when he filed DE 331.

## 1. SWEET'S AFFIDAVIT IS NOT "COMPETENT" AND IS THEREFORE INADMISSIBLE AND MUST BE STRUCK.

An Affidavit is a substitute for direct testimony offered on the witness stand. It is subject to all of the same rules that govern the admission of live testimony. To be admissible in federal courts, testimony in an affidavit **must be offered by a competent witness.**

> "**Affidavits** or Declarations – a supporting or opposing **affidavit** or declaration **<u>must</u>** be (1) made on personal knowledge, (2) set out facts

---

[1] Assuming Sweet's Affidavit is true – no small assumption given his blatant lies and fraud to date – one must wonder WHY Sweet did not present a proper/admissible Affidavit from counsel for Livingston County with whom he claims to have spoken. Perhaps, it is because IF the Affidavit is true, counsel for Livingston County has committed legal malpractice by failing to file a proper claim, and, "consenting" to a result [subordination] that is NOT legally possible and directly contrary to his client's interest.

that **would be admissible in evidence,** and (3) show that the affiant or declarant **is competent to testify on the matters stated."** *FRCP 56(c)(4)*

Hearsay –what someone else said –is generally inadmissible, unless covered by an applicable exception. Since Livingston County has NOT appeared as an interested person in this bankruptcy, is not a party to this or any other litigation, and, has NOT filed a claim or had one allowed, there is no exception that would permit Sweet to give hearsay testimony as to what someone said on behalf of Livingston County. Sweet's Affidavit is inadmissible hearsay, and, he is NOT competent to testify to the substance of the conversation [if it even occurred].

2. **EVEN IF SWEET'S AFFIDAVIT WERE ADMISSIBLE, SWEET AND LIVINGSTON COUNTY CANNOT CONSENT TO AN ORDER/RESULT SECTION 724 DENIES THIS COURT THE POWER TO GRANT.**

Parties [and certainly not non-party strangers] cannot confer judicial power/subject-matter jurisdiction by consent where it does not otherwise exist. *Sweeton v. Brown, 27 F.3d 1162, 1168-69 (6th Cir.1994) (citing Bauxites, 456 U.S. at 702, 102 S.Ct. 2009).* A void judgment exists where a court renders a judgment "over matters beyond the scope of authority granted to it". *United States v. Zima, 766 F.2d 1153, 1159 (7th Cir.1985)*

3. **LIVINGSTON COUNTY CANNOT RECEIVE ANY DISTRIBUTION FROM THE BANKRUPT ESTATE.**

As more fully set forth in Exhibit 1, PP 1-2 and ns 1, 2 and 5, no creditor may receive a distribution of proceeds, secured or unsecured, from a

bankrupt estate, without having filed a claim and having that claim allowed.[2] To file such a claim, and, to have it allowed, the claim must exist on May 24, 2012, the date of the Petition. Livingston County had no debt that could become a claim on May 24, 2012. See Exhibit 1, PP 3-5, and ns 12, 14, 15.

Sweet's unsupported representation that Claimant lacks "constitutional standing" is an intentional lie, contrary to established case law already of record in this bankruptcy case and its various adversary cases.[3]

---

[2] *In re Schaffer, 173 BR 393 (BC ND Ill 1994)* **(An allowed claim is one that is filed pursuant to Section 501. 11 U.S.C. § 502(a)… Therefore, the only legitimate outcome is that for both secured and unsecured claims to be allowed, they must be filed under Section 501. To reach any other result would be absurd.)**

[3] *Hartford Und. Ins. Co. v. Union Planters Bank NA, 530 US 1, 5 (2000)(* **"Administrative expenses, however, do not have priority over secured claims, see §§ 506…); DE 13. PP3, 4** *In re Darnell, 834 F. 2d 1263, 1265 (6th Cir 1987); In re Two Springs Me. Club, 424 BR 808, 815 (BC ND Ohio 2010)***(secured liens transferred to proceeds of sale attach to those proceeds and must be paid before any of those proceeds may be used to pay unsecured claims.);** *In re Computer Systems, 446 BR 837, 843 (BC ND Ohio 2011)***(secured claims must be satisfied out of the asset(s) they encumber before any proceeds of the asset become available to unsecured claimants, including administrative claims); DE 13, P7** *In re Ferncrest Court Partners, 66 F.3d 778, 782 (6th Cir.1995)(***The general rule is that administrative expenses cannot be charged against secured collateral and are chargeable against only the unsecured collateral of the estate pursuant to Bankruptcy Code § 503.);** *In re Foremost Mfg. Co., 137 F. 3d 919, 923-24 (6th Cir 1998)(* **the general rule in bankruptcy is that administrative** [trustee attorney fees] **expenses are paid only after secured creditors are paid… We prefer this "plain meaning" approach for the simple reason that § 506(c) is unambiguous;** *Matter of CD Elec. Co., Inc., 146 BR 786, 788-89 (BC ND Ind1992)* **(Generally, the administrative expenses of a debtor's case "are not to be charged against secured [or under secured] creditors' collateral" because a secured creditor's interest in collateral is a property right which is not**

For the reasons stated above, Sweet's RESPONSE – like his pleadings leading to it – is fraudulent. The sole remaining question is how long this Court will continue to tolerate Sweet's ongoing and continuing fraud.

Respectfully Submitted,

__/S/ MICHAEL E. TINDALL____

MICHAEL E. TINDALL
18530 MACK AVE., STE 430
DETROIT, MI 48236
(248)250-8819
**Direct Email: met@comcast.net**

Dated: 11/6/20

---

**impaired in bankruptcy proceedings… Administrative expenses instead are to be paid from the debtor's unencumbered assets… Section 506(c), however, "`was not intended as a substitute for the recovery of administrative expenses that are appropriately the responsibility of the debtor's estate… A professional must forego compensation and reimbursement of expenses if an estate has no unencumbered assets and the professional is unable to show that he or she meets the criteria set forth in 11 U.S.C. § 506(c));** *In re Dow Corning Corp., 456 F. 3d 668 (6th Cir 2006)(* The **unpaid amount** of the **allowed secured claim**, in excess of the remaining proceeds of secured collateral, would become an unsecured claim against the bankrupt estate.) *In re Welzel, 275 F. 3d 1308 (11th Circuit 2001); In re Gencarelli, 501 F. 3d 1(1st Cir 2007).*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**IN RE:**
**CHRISTOPHER D. WYMAN**
***Debtor(s),***

______________________________\

**CASE NO. 12-32264**
**CHAPTER 7**

## CERTIFICATE OF SERVICE
## (Modified for PEDUP)

MICHAEL E. TINDALL, (hereinafter "Claimant"), Assignee of all [100%] claims of BARBARA DUGGAN ($32,240.34), and a party in interest holding a secured attorney lien ($34,100.00/$21,869.33) against the proceeds of the Realty (hereinafter collectively "allowed secured claim"), certifies that Claimant/Defendant/Counter Plaintiff's REPLY SUPPORTING FRCP 54 MOTION TO VACATE VOID ORDER SUBORDINATING ADVALOREM PROPERTY TAXES UNDER 11 USC 724 was submitted for filing through the PEDUP program on November 6, 2020 and will be served on Plaintiff Trustee Sweet through the Court's ECF System on the date and at the time so filed by the Clerk.

Respectfully Submitted,

_/S/_MICHAEL E. TINDALL_
MICHAEL E. TINDALL
18530 MACK AVE., STE 430
DETROIT, MI 48236
(248)250-8819
**Direct Email: met@comcast.net**

Dated: 11/6/20

FILED '20 MAR 10 PM12:50
US BANKRUPTCY MIE-DET

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**IN RE:**
**CHRISTOPHER D. WYMAN**
***Debtor(s),***

**ADV. NO: 20-03012**

**SAMUEL D. SWEET, Trustee,**
**Plaintiff,**

**CASE NO. 12-32264**
**CHAPTER 7**

**v.**

**MICHAEL E. TINDALL, Individually and as 100% Assignee of Barbara Duggan**

**Defendant.**

**CLAIMANT'S REPLY TO TRUSTEE'S RESPONSE AND BRIEF, DE18, IN OPPOSITION TO CLAIMANT'S MOTION TO DISMISS AMENDED COUNTER COMPLAINT, DE 10, FOR LACK OF SUBJECT MATTER JURISDICTION UNDER FRCP 12(b)(1) AND 12(h)(3)**

MICHAEL E. TINDALL, (hereinafter "Claimant"), Assignee of all [100%] claims of BARBARA DUGGAN ($32,240.34), and a party in interest holding a secured attorney lien ($34,100.00/$21,869.33) against the proceeds of the sale of Realty (hereinafter collectively "**allowed secured claim**"), states:

On March 3, 2020, Trustee Sweet filed his RESPONSE to Claimant's MOTION TO DISMISS, DE 13. The RESPONSE is completely incoherent, fails to meet the Trustee's burden of proof, and, as set forth below, does not even accurately recite the applicable state or federal bankruptcy law.

The filing of a Chapter 7 Petition is a "**Kodak Instamatic - Freeze-Frame**" moment. While life continues "**post-petition**", much of what results in a Chapter 7 bankruptcy administration is permanently anchored to "**the date of filing of the petition**". To be a creditor in bankruptcy, one must have a "**claim**" that arose at or before the "**order for relief**". That claim can only be "**allowed**" and "**secured**" in the amount

**"as of the date of filing the petition".** Property taxes, real or personal, perfectly illustrate this principle.

"Pre-petition taxes" are those which are incurred, **<u>before</u>** the date of the filing of a taxpayer's bankruptcy petition. Their status and character is determined by state law, **<u>as of the date of the petition.</u>** One must file a Proof of Claim pursuant to Fed R. Bank 3002 to have the claim, secured or unsecured, "**allowed**" in order to participate in distributions of assets from the bankruptcy. A taxing authority may, instead, rely exclusively on their security (the real estate) or non-dischargeable status (in Chapter 7) rather than file a proof of claim. It will not receive any distribution from the bankruptcy estate,[1] but it has the right to collect, by executing on the collateral pursuant to state law, after the bankruptcy is concluded.[2]

"Post-petition taxes" are those which are incurred, **after the date of the filing of the bankruptcy petition**. Post-petition taxes, like other ordinary course debts and obligations incurred during the bankruptcy case, are considered part of the administrative costs of maintaining and administering the bankruptcy estate.[3] For individual Chapter 7 debtors, post-petition taxes are not dischargeable.[4] If an individual Chapter 7 debtor does not pay post-petition taxes, the taxing authority can collect them, under state law, after the bankruptcy is concluded.[5]

---

[1] *In re Matteson, 535 BR 156 BAP 6th Cir 2015:* **"Secured creditors "are not required to file a proof of claim solely to preserve their lien."** *In re Nwonwu, 362 B.R. 705, 708 (Bankr. E.D.Va.2007)* (examining late filed proof of claim). **And § 506(d) provides that a lien securing a claim is void if the claim is not an allowed secured claim, unless the claim "is not an allowed secured claim <u>due only</u> to the failure ... to file a proof of such claim...."** 11 U.S.C. § 506(d);…";

[2] *Dewsnup v. Timm, 502 U.S. 410, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992)* **(failure to file proof of claim does not affect a lien's validity)**; *Interstate Fin. Corp. v. Scrogham, 265 F.2d 889, 892 (6th Cir.1959)* **(secured creditor is "not required to file a proof of claim in order to protect its security.")**; *PCFS Fin. v. Spragin (In re Nowak), 586 F.3d 450, 455 (6th Cir. 2009)* **(citing § 506(d) and Bankruptcy Rule 3002(a) in observing that a "secured creditor is usually not required to file a proof of claim to maintain its interest in the collateral to which its security interest attaches.")**;

[3] *11 USC 503(b)(1)(B)* "any tax— (i) incurred by the estate, **<u>whether secured or unsecured</u>, including property taxes for which liability is in rem, in personam, or both**, except a tax of a kind specified in section 507(a)(8) of this title:…"

[4] Section 727(b).

[5] *In re Kressler, 252 B.R. 632, 633 (Bankr.E.D.Pa.2000) aff'd, 40 Fed. Appx. 712 (3d Cir.2002)* **("[T]he failure of a secured creditor to file a proof of claim will not result**

With this in mind, the following illustrates Trustee Sweet's lack of standing, and, the mootness of the issues raised by the Amended Complaint.

## I. <u>STANDING:</u>

Tellingly, Sweet completely ignores the considerable case law establishing that proceeds of secured collateral may NOT be used to pay administrative expenses. Instead, Sweet argues he has standing under *11 USC 704(5)*. Yet, as the motion clearly and repeatedly sets forth, the issue raised by the motion is constitutional "**Article III**" standing, not statutory "**party in interest**" standing. A bankruptcy trustee must have and must prove all three forms of standing.[6]

The Subordination Order entered by this Court subordinated payment of state property tax liens **below** [junior to] unsecured priority administrative expenses. Those unsecured priority administrative expenses are **below** [junior to] Claimant's **allowed secured claim** that considerably exceeds – in amount – the remaining proceeds of the secured collateral.[7] Therefore, neither Sweet nor the unsecured creditors he claims to represent under Section 704(5) have the necessary "stake" to support Article III standing to bring this action.

## II. <u>MOOTNESS:</u>

1. *MCL 211.60a*, cited by Trustee Sweet, is limited by its express terms to **"taxes levied after December 31, 1997 and before January 1, 1999".**[8]

**Ad valorem taxes** must be levied in Michigan on all property, real and personal,[9] except that specifically exempted by law.[10] The tax status of taxable property in Michigan

---

**in the loss of the creditor's lien and generally speaking, after the bankruptcy case is concluded, the creditor may pursue the collateral to satisfy its lien[.]**").

[6] *Rajamin v. Deutsche Bank Nat'l Tr. Co., 757 F.3d 79, 84 (2d Cir. 2014). See Scott v. Residential Capital, LLC (In re Residential Capital, LLC); No. 14 Civ. 761(ER), 2015 WL 629416, at *3 (S.D.N.Y. Feb. 13, 2015)* ("**To have standing in bankruptcy court, a party must meet three requirements: (1) Article III's constitutional requirements; (2) federal court prudential standing requirements; and (3) the "party in interest" requirements under Section 1109(b) of the Bankruptcy Code.**"); *In re Old Carco LLC, 500 B.R. 683, 690 (Bankr. S.D.N.Y. 2013).*

[7] The unpaid amount of the **allowed secured claim**, in excess of the remaining proceeds of secured collateral, would become an unsecured claim against the bankrupt estate. *In re Dow Corning Corp., 456 F. 3d 668 (6th Cir 2006); In re Welzel, 275 F. 3d 1308 (11th Circuit 2001); In re Gencarelli, 501 F. 3d 1(1st Cir 2007).*

[8] *MCL 211.60a(1), (2), and (3).*

for any given year is determined on the December 31 immediately preceding the taxable year. December 31 is commonly referred to as "tax day."[11] Taxes become a lien on the December 1 following the prior December 31st tax day.[12]

2. Even if *MCL 211.60a* were NOT so limited, Claimant's **allowed secured claim** was the sole lien against the Realty on **the date of the Petition,** May 24, 2012. All outstanding property taxes against the Realty became liens **AFTER** Claimant's allowed secured claim was perfected, and, **AFTER** the Petition was filed [post-petition]. Therefore, Livingston County is/was NOT a creditor in this bankruptcy, and, NONE of the outstanding property taxes satisfy the **"secures an allowed claim for a tax"** requirement of *11 USC 724(b)(1)*.

Section *101(10)* states, in relevant part: "The term "creditor" means "(A) entity that has a claim against the debtor **that arose at the time of or before** the order for relief concerning the debtor…". Section *101(15)* states: **"The term "entity" includes …. governmental unit** …". Section *101(53)* states: The term "**statutory lien"** means lien arising solely by force of a statute **on specified circumstances or conditions …".** On May 24, 2012, the "**specified circumstances**" [i.e. December 1, 2012] had not occurred. Therefore, no tax claim and no tax creditor existed; no tax lien existed, and, Claimant was the sole and most senior lien claimant.

Section 502 controls whether a creditor's claim will be "**allowed or disallowed.**"[13] Section 502(a) of the Code provides: "[a] claim or interest, **proof of which is filed under section 501 of this title"** is deemed **allowed**. Section 502(b) provides the amount

---

[9] The Michigan Constitution directs the legislature to provide for "**uniform general ad valorem taxation of real and tangible personal property not exempt by law**." *Mich Const 1963 art 9, §3. Ad valorem tax* means **"a tax or duty upon the value of the article or thing subject to taxation."** *Continental Cablevision of Michigan, Inc v Roseville, 430 Mich 727, 730 n1, 425 NW2d 53 (1988); Meijer Inc v City of Midland, 240 Mich App 1, 3 n1, 610 NW2d 242 (2000).*

[10] *M.C.L 211.10*

[11] *MCL 211.2. In re Holly's, Inc., 172 BR 545 (BC WD Mi 1994)*

[12] *MCL §211.40; United States v. Michigan, 429 F. Supp. 8, 10-11 (E.D.Mich.1977), In re Shoreham Paper Co., 117 B.R. 274, 275-76 (Bankr.W.D.Mich.1990); Boekeloo v. Hodel, 828 F.2d 727, 729 (Fed.Cir.1987)***(in Michigan the lien on real property that is consistent with express statutory language arises on December 1st of any given year in relation to the taxes assessed on December 31st of the preceding year.)**

[13] *In re Gift, 469 BR 800 (BC MD Tenn 2012); Gencarelli v. UPS Capital Business Credit, 501 F.3d 1, 6 (1st Cir.2007).*

of an allowed claim is the amount "**as of the date of filing of the petition**".[14] A secured claim is defined by § 506(a)(1) as **"[a]n allowed claim of a creditor secured by a lien on property…".** § 506(d) provides that **a lien securing a claim is void** if the claim is not **an allowed secured claim.**[15] No claim was filed for real property taxes under Section 501 for any year. See, Exhibit 1. No lien existed on May 24, 2012, the petition date. Therefore, no claim for real property taxes could be "allowed" under 502, secured under Section 506, and, no such "**allowed secured claim**" existed, as required by Section 724(b).

Section 724(b) governs the order of distribution of both real and personal property subject to **valid, non-voidable** federal, state, and local tax liens in a Chapter 7 case. In a Chapter 7 liquidation case, upon any sale of property, **the claims of secured creditors must be satisfied in full before any payment is made to claimants with a statutory priority or to general unsecured creditors.** Section 724(b) deviates from the general rule that **unsecured priority claims** do not trump perfected secured claims where **non-avoidable federal, state, and local tax liens** exist at **the date of the petition**. The provision enables **unsecured priority claimants** occupying the first through seventh rungs on the priority ladder "to step into the shoes of the tax collector" and to receive distributions from property of the estate IF and only IF **the tax claim is properly allowed and secured.** To the extent that the tax lien is subordinated, it is treated as a special category of **unsecured claim** that is payable prior to any distribution to the general creditors.[16] Where, as here, no tax claim existed **at the date of the petition**; no lien existed **at the date of the petition**; no tax claim was allowed; and, no allowed tax claim was secured, under Section 506, Section 724(b) does not permit subordination.

*3.* Michigan real property taxes are "**ad valorem**" taxes and are not subject to subordination under *11 USC 724(b)(1).*

---

[14] *In re Schaffer, 173 BR 393 (BC ND Ill 1994)* **(An allowed claim is one that is filed pursuant to Section 501. 11 U.S.C. § 502(a)… Therefore, the only legitimate outcome is that for both secured and unsecured claims to be allowed, they must be filed under Section 501. To reach any other result would be absurd.**)

[15] *In re Matteson, 535 BR 156 (BAP 6th Circuit 2015)*

[16] *Michigan Municipal League, Bankruptcy 101 Manual for Michigan Municipalities, Louis P. Rochkind, September 2010*

*119 STAT. 124, PUBLIC LAW 109–8, Title VII, Sec 701, APR. 20, 2005, Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA),* amended section 724(b)(1) to provide that tax liens arising in connection with **ad valorem taxes** will **not** be subordinated under Section 724. *11 U.S.C. § 724(b)(1)(as amended)* provides:

> "(b) Property in which the estate has an interest and **that is subject to a lien that is not avoidable under this title** (*other than to the extent that there is a **properly perfected unavoidable** tax lien arising in connection with **an ad valorem tax on real** or personal **property** of the estate*) **and** that secures **an allowed claim** for a tax, or proceeds of such property, shall be distributed— "

Section 724(f) confirms this exclusion "**Notwithstanding the exclusion of ad valorem tax liens under this section…**".

For the reasons above stated, Trustee Sweet lacks Article III standing to maintain this action; and, the issues presented by the Amended Complaint are moot.

Respectfully Submitted,

/S/

MICHAEL E. TINDALL
18530 MACK AVE., STE 430
DETROIT, MI 48236
(248)250-8819
**Direct Email: met@comcast.net**

Dated: 3/9/20

# EXHIBIT NO: 1

# Eastern District of Michigan
# Claims Register

12-32264-dof Christopher D Wyman

**Judge:** Daniel S. Opperman.Flint **Chapter:** 7
**Office:** Flint **Last Date to file claims:**
**Trustee:** Samuel D. Sweet **Last Date to file (Govt):**

| | | |
|---|---|---|
| *Creditor:* (21178407)<br>Michael Tindall<br>Attorney at Law<br>P.O. Box 46564<br>Mount Clemens, MI 48046 | **Claim No: 1**<br>*Original Filed*<br>*Date*: 11/25/2014<br>*Original Entered*<br>*Date*: 11/25/2014 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Michael E. Tindall (DISBARRED)<br>*Modified:* |

| | | |
|---|---|---|
| Amount | claimed: | $28398.53 |
| Secured | claimed: | $28398.53 |

*History:*

| | | | | |
|---|---|---|---|---|
| Details | | 1-1 | 11/25/2014 | Claim #1 filed by Michael Tindall, Amount claimed: $28398.53 (Tindall (DISBARRED), Michael) |
| | | 198 | 01/24/2019 | Objection to Claim Number 1 of Claimant Barbara Duggan. Filed by Attorney Samuel D. Sweet (Sweet, Samuel) Hearing scheduled 3/6/2019 at 09:30 AM at Courtroom, Flint, 226 West Second St.. Response due by 2/27/2019. |

*Description:* (1-1) PERFECTED JUDGMENT LIEN OF B. DUGGAN

*Remarks:*

| | | |
|---|---|---|
| *Creditor:* (23235304)<br>Atlas Acquisitions LLC<br>294 Union St.<br>Hackensack, NJ 07601 | **Claim No: 2**<br>*Original Filed*<br>*Date*: 12/02/2014<br>*Original Entered*<br>*Date*: 12/02/2014 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Avi Schild<br>*Modified:* |

| | | |
|---|---|---|
| Amount | claimed: | $671.77 |
| Secured | claimed: | $0.00 |

*History:*

| | | | | |
|---|---|---|---|---|
| Details | | 2-1 | 12/02/2014 | Claim #2 filed by Atlas Acquisitions LLC, Amount claimed: $671.77 (Schild, Avi) |

*Description:*

*Remarks:*

| | | |
|---|---|---|
| *Creditor:* (23272908)<br>Discover Bank<br>DB Servicing Corporation | **Claim No: 3**<br>*Original Filed*<br>*Date*: 12/23/2014 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Darlene Slusher |

*History:*

| | | | | |
|---|---|---|---|---|
| Details | | 3-1 | 12/23/2014 | Claim #3 filed by Discover Bank, Amount claimed: $7589.34 (Slusher, Darlene) |

*Description:*

*Remarks:*

| | | |
|---|---|---|
| PO Box 3025<br>New Albany, OH 43054-3025 | *Original Entered Date*: 12/23/2014 | *Modified:* |

| Amount | claimed: | $7589.34 |
|---|---|---|

*History:*

| Details | | 3-1 | 12/23/2014 | Claim #3 filed by Discover Bank, Amount claimed: $7589.34 (Slusher, Darlene) |
|---|---|---|---|---|

*Description:*

*Remarks:*

| | | |
|---|---|---|
| *Creditor:* (21178415)<br>Russell Collection Agency<br>P.O. Box 7009<br>Flint, MI 48507-0009 | **Claim No: 4**<br>*Original Filed Date*: 12/24/2014<br>*Original Entered Date*: 12/24/2014 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Chris Taylor<br>*Modified:* |

| Amount | claimed: | $277.00 |
|---|---|---|

*History:*

| Details | | 4-1 | 12/24/2014 | Claim #4 filed by Russell Collection Agency, Amount claimed: $277.00 (Taylor, Chris) |
|---|---|---|---|---|

*Description:*

*Remarks:*

| | | |
|---|---|---|
| *Creditor:* (21178404)<br>Mark Goldman & Associates<br>30300 Northwestern Hwy., Ste. 312<br>Farmington, MI 48334 | **Claim No: 5**<br>*Original Filed Date*: 02/13/2015<br>*Original Entered Date*: 02/13/2015 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Marc A. Goldman<br>*Modified:* |

| Amount | claimed: | $10416.17 |
|---|---|---|

*History:*

| Details | | 5-1 | 02/13/2015 | Claim #5 filed by Mark Goldman & Associates, Amount claimed: $10416.17 (Goldman, Marc) |
|---|---|---|---|---|

*Description:* (5-1) legal services

*Remarks:* (5-1) interest to the date of bky filing

## Claims Register Summary

**Case Name:** Christopher D Wyman
**Case Number:** 12-32264-dof
**Chapter:** 7
**Date Filed:** 05/24/2012
**Total Number Of Claims:** 5

| | |
|---|---|
| **Total Amount Claimed*** | $47352.81 |
| **Total Amount Allowed*** | |

FILED '20 MAR 10 PM12:50
US BANKRUPTCY CT-E-DET

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**IN RE:**

**CHRISTOPHER D. WYMAN**
***Debtor(s),***

**ADV. NO: 20-03012**

**SAMUEL D. SWEET, Trustee,**
**Plaintiff,**

**CASE NO. 12-32264**
**CHAPTER 7**

**v.**

**MICHAEL E. TINDALL, Individually and as 100% Assignee of Barbara Duggan**

**Defendant.**

## CERTIFICATE OF SERVICE

Defendant, in pro per, hereby certifies that the following were served on Plaintiff Trustee Sweet on March 10, 2020 by filing through the Court's ECF System.

1. **CLAIMANT'S REPLY TO TRUSTEE'S RESPONSE AND BRIEF, DE18, IN OPPOSITION TO CLAIMANT'S MOTION TO DISMISS AMENDED COUNTER COMPLAINT, DE 10, FOR LACK OF SUBJECT MATTER JURISDICTION UNDER FRCP 12(b)(1) AND 12(h)(3)**

/S/
MICHAEL E. TINDALL

Dated: 3/9/20

18530 MACK AVE., STE 430
DETROIT, MI 48236
(248)250-8819
**Direct Email: met@comcast.net**